Aquellos Aseguradores de Lloyd's London, etc., demandantes y recurridos, *v.* Compañía de Desarrollo Comercial de Puerto Rico y otros, e Interstate Indemnity Company, demandados y recurrente la última; Albany Insurance Company, demandante y recurrente, *v.* Compañía de Desarrollo Comercial de Puerto Rico y otros, demandados y recurridos; Hanover Insurance Company, etc., demandantes y recurrentes, *v.* Pavarini Construction Company, Inc. of Puerto Rico y otros, demandados y recurridos; Aquellos Aseguradores de Lloyd's London Firmantes de la Póliza Núm. 8730231000A, demandantes y recurrentes, *v.* Compañía de Desarrollo Comercial de Puerto Rico y otros, demandados y recurridos; Alliance Assurance Company, Ltd., demandante y recurrente, *v.* J.F. Montalvo Wholesales, Inc., etc., demandados y recurridos; Albany Insurance Company, demandante y recurrida, *v.* Compañía de Desarrollo Comercial de Puerto Rico, Alliance Assurance Company, Ltd., J.F. Montalvo Wholesales, Inc., Consultores Técnicos Asociados y Pavarini Construction Company Inc. of Puerto Rico, demandados y recurrentes las dos primeras.

*Números:* RE-86-498
RE-86-499
RE-86-500
RE-86-501
RE-86-578
RE-86-579

*Resueltos:* 30 de abril de 1990

*Migdalia López-Gómez, Adrián Mercado,* de *Rúa & Mercado,* y *Alex González,* abogados de Pavarini Construction Company, Inc. of Puerto Rico y sus aseguradoras Interstate Indemnity Company y CNA Casualty of Puerto Rico, Inc.; *Jorge Carazo Quetglas, Francisco G. Bruno,* de *Sweeting, González & Cestero,* y *Álvaro R. Calderón, Jr.,* abogados de Albany Insurance Company, Hanover Insurance Company, c/o General Covers Underwriters, Utica Mutual Insurance Co., Industrial Risks Insurers, por sí, en representación y para el beneficio de ciertas compañías de seguros, Sterling Drug, Inc., Sterling Products International, Inc., The Sterling Group, Puerto Rican-American Insurance Co., Frigorífico Nogal Foods, Inc. y Packers Provision Co. of Puerto Rico, Inc.; *Federico Calaf Legrand,* de *Reichard, Colberg & Calaf,* y *Benjamín Acosta, Jr.,* abogados de Alliance Assurance Company, Ltd. y la Compañía de Desarrollo Comercial de Puerto Rico; *Martiza Julia Ramos,* de *Bobonis, Bobonis & Rodríguez Poventud,* abogados de Aquellos Aseguradores de Lloyd's London, recurrentes; *Jaime Rivera Torres,* abogado de J.F. Montalvo Wholesales, Inc.; *René Pinto Lugo,* de *Cordero, Colón, Miranda & Pinto,* abogado de Lord Mechanical Company of Puerto Rico, Inc. y su aseguradora Aetna Insurance Company, recurridos.

El Juez Asociado Señor Ortiz emitió la opinión del Tribunal.

La Compañía de Desarrollo Comercial de Puerto Rico (CoDeCo), corporación pública creada con el propósito de promover el desarrollo del comercio en Puerto Rico, encomendó a Pavarini Construction Company, Inc. of Puerto Rico (Pavarini) la construcción de un edificio comercial destinado a la venta y almacenaje de mercancía. Finalizada la construcción del edificio Mercado Central Fase I, CoDeCo arrendó los locales en que se dividió el edificio a Sterling Products International, Inc., a Packers Provision Co. of Puerto Rico, Inc. (Packers), a J.F. Montalvo Wholesales, Inc. (J.F. Montalvo), a International Meat Wholesales, Inc., a La Cumbre Sales Company (La Cumbre), a American Food Processors, Inc. y a Ideal Unlimited Services Corp.

El 3 de marzo de 1981 ocurrió un incendio en el edificio. Se originó en el local ocupado por J.F. Montalvo y luego se extendió inmediatamente a los locales vecinos, quedando la propiedad de las arrendatarias y el edificio totalmente destruidos.

Como consecuencia de dicho siniestro, las distintas aseguradoras de las arrendatarias pagaron a sus asegurados los daños; se subrogaron y presentaron diversas acciones ante el Tribunal Superior, Sala de Bayamón, reclamando el resarcimiento de los daños a la constructora Pavarini, su aseguradora CNA Casualty of Puerto Rico, Inc. y a la dueña del edificio, CoDeCo. Esta última instó demanda de tercero contra Lord Mechanical Company of Puerto Rico, Inc., quien estuvo a cargo de la instalación de los compartimientos refrigerados del edificio y del sistema de roceadores automáticos, y a su aseguradora Aetna Insurance Company. A su vez, CoDeCo y su aseguradora Alliance Assurance Company, Ltd. (Alliance) instaron acción contra las arrendatarias, fundamentada en el Art. 1453 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 4060, que impone responsabilidad al arrendatario por la pérdida que sufra la cosa arrendada a menos que pruebe que no medió culpa suya.

Los casos fueron consolidados y posteriormente el tribunal de instancia dictó tres (3) sentencias sumarias parciales. El 21 de agosto de 1986 el tribunal desestimó la causa de acción que

instaron CoDeCo y Alliance contra las arrendatarias La Cumbre, Packers y su aseguradora Puerto Rican-American Insurance Company (PRAICo). Fundamentó su decisión en que no existía controversia en cuanto al hecho de que el incendio se originó en el local ocupado por la arrendataria J.F. Montalvo y que en ese local las demás arrendatarias no tenían control, por lo tanto, la pérdida de la propiedad no se debió a su negligencia. Quedaron así relevadas de la responsabilidad que establece el antes citado Art. 1453 del Código Civil de Puerto Rico.

Posteriormente, en septiembre de 1986, por el mismo fundamento el tribunal de instancia desestimó la demanda presentada por CoDeCo y Alliance contra las restantes arrendatarias: Ideal Unlimited Services Corp., International Meat Wholesales, Inc., American Food Processors, Inc. y Sterling Products International, Inc. Sin embargo, el tribunal declaró sin lugar la Moción Solicitando Sentencia Sumaria presentada por la arrendataria J.F. Montalvo, ya que ésta tenía arrendado el local donde se originó el incendio y almacenaba allí mercancía seca en un área destinada para refrigeración. De dicha sentencia acude ante nos Alliance en el Recurso RE-86-578.

El 15 de septiembre de 1986 se desestimaron las acciones instadas por CoDeCo y las aseguradoras de varios inquilinos contra Pavarini y Lord Mechanical.

Concluyó que las aseguradoras, al subrogarse en el lugar de los inquilinos, estaban supeditadas al derecho que éstos tenían. Concluyó que entre las aseguradoras y Pavarini no existía relación contractual, por lo que su causa de acción sólo podía surgir bajo el Art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141. Analizados los elementos de la causa de acción de acuerdo con el citado Art. 1802 del Código Civil de Puerto Rico, se determinó que no podía establecerse nexo causal entre la alegada negligencia de Pavarini y los daños ocasionados. Igualmente se concluyó que tampoco existía nexo causal entre la alegada negligencia de Lord Mechanical al instalar los compartimientos de refrigeración del edificio y los daños ocasionados. En cuanto a las compañías aseguradoras, resolvió que éstas asumieron el riesgo al

asegurar los locales en las condiciones en que estaban. Finalmente, desestimó la acción decenal que CoDeCo presentó contra el subcontratista Lord Mechanical porque el caso no trata de vicios ocultos de construcción, sino que las deficiencias en el edificio eran aparentes.

De dicha sentencia acudieron las distintas aseguradoras de los inquilinos y la aseguradora de la dueña del edificio.

En el Recurso RE-86-500 comparecieron las aseguradoras Hanover Insurance Company, General Covers Underwriters, Utica Mutual Insurance Co. e Industrial Risks Insurers. En el Recurso RE-86-501 compareció la aseguradora Aquellos Aseguradores de Lloyd's London. En el Recurso RE-86-499 compareció Albany Insurance Co. El Recurso RE-86-579 fue presentado por CoDeCo y su aseguradora Alliance. Finalmente, en el Recurso RE-86-498 comparece Interstate Indemnity Company, aseguradora de Pavarini, y hace el siguiente señalamiento de error:

> *UNICO ERROR*: La codemandada-recurrente respetuosamente entiende que el Honorable Tribunal sentenciador incurrió en error al no imponer el pago de honorarios de abogado a las partes demandantes-recurridas tras su determinación implícita de temeridad. Caso Núm. RE-86-498, solicitud de revisión de 16 de octubre de 1986, pág. 3.

Expedimos los autos y los consolidamos.

En síntesis, nos corresponde resolver las siguientes controversias: si actuó correctamente el tribunal de instancia al dictar sentencia sumaria y resolver que no hubo nexo causal entre la alegada negligencia de Pavarini y los daños, cuando esto no se argumentó en las mociones mediante las cuales se solicitó que se dictara sentencia sumaria; si erró al concluir que no existe nexo causal entre la negligencia de la constructora Pavarini y los daños causados; si erró al concluir que las aseguradoras de las arrendatarias asumieron el riesgo y están impedidas de reclamar los daños que ocurrieron como consecuencia de unos defectos en los locales asegurados que ellos conocían y que cobraron tarifa para el seguro en proporción a esos defectos; si erró al concluir que las arrendatarias no eran responsables por los daños ocasionados a

los locales arrendados, y si procede la imposición de honorarios de abogado a las partes demandantes.

## I

Evaluamos, en primer lugar, si el foro de instancia cometió error al resolver que no hubo nexo causal entre la negligencia de Pavarini y los daños ocurridos cuando esto no se argumentó en la Moción Solicitando Sentencia Sumaria.

La Regla 36.3 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III) dispone que se dictará sentencia sumaria "si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente".

■ El propósito de la sentencia sumaria es aligerar la tramitación de un pleito para evitar la celebración de un juicio en su fondo cuando no existe controversia sobre hechos materiales y sólo resta dirimir una controversia de derecho. *Roth v. Lugo*, 87 D.P.R. 386, 392 (1963).

En el caso de autos, la demandada Pavarini presentó una moción en la que solicitó que se dictara sentencia sumaria. Alegó que las aseguradoras demandantes evaluaron el informe preparado por la Insurance Service Office (I.S.O.) sobre el edificio Mercado Central Fase I y el mismo señalaba que en el edificio no existían *firewalls* que dividieran los diferentes locales de los inquilinos y que sobre los módulos de refrigeración no existían roceadores automáticos; por lo tanto, ellas asumieron el riesgo al arrendar los locales en esas condiciones. La tercera demandada Lord Mechanical también presentó una moción para solicitar que se dicte sentencia sumaria en la cual alegó que CoDeCo (tercera demandante), al aceptar el trabajo realizado por Lord Mechanical, le dio a entender que el trabajo se había realizado conforme a los planos y especificaciones preparados para el proyecto.

Al resolver, el tribunal señaló que la reclamación de los demandantes está fundada en el Art. 1802 del Código Civil de Puerto Rico, *supra*, y concluyó que no hubo acto negligente por parte de Pavarini y Lord Mechanical, y que tampoco hubo nexo causal entre la alegada negligencia de ellas y los daños sufridos en el edificio. Citamos de la Sentencia Sumaria Parcial emitida por el foro de instancia:

> Como hemos consignado anteriormente es imprescindible la relación directa entre el acto negligente y el daño. Estimamos que no puede establecerse nexo causal entre la alegada negligencia de Pavarini al construir y el daño ocasionado. La fuente generadora y directa del daño fue el incendio que nada tiene que ver con las actuaciones u omisiones de Pavarini. Todo lo demás es especulativo y pretender imponer responsabilidad más allá de lo permitido por ley. Nótese que el origen del mismo es desconocido hasta el presente. Siendo ello así tampoco se conoce quién o qué lo ocasionó. No habiendo acto negligente ni nexo causal no puede prosperar la acción instada por las aseguradoras contra Pavarini y CNA. Caso Núm. RE-86-498, *Exhibit* I de la Solicitud de revisión de 16 de octubre de 1986, pág. 14.

En las mociones en las que se solicitó sentencia sumaria no se hizo argumentación alguna respecto a la negligencia de las demandadas ni al nexo causal. Sin embargo, en la Oposición a la Solicitud de Sentencia Sumaria presentada por CODECO, expresamente se argumentó que la causa de acción incoada estaba predicada en las disposiciones del Art. 1802 del Código Civil de Puerto Rico, *supra*, y que los daños sufridos fueron producto de los actos y las omisiones negligentes de Lord Mechanical.

A los fines de resolver una moción que solicita sentencia sumaria y determinar la existencia de una controversia de hechos, el tribunal puede tomar en consideración todos los documentos obrantes en los autos. Así, en *Conde Del Valle v. Tribunal Superior*, 102 D.P.R. 18, 20 (1974), permitimos que se tomara en consideración la contestación a un interrogatorio y un requerimiento de admisiones para evaluar si existía una controversia legítima de hechos. Posteriormente, en *Flores v. Municipio de*

*Caguas*, 114 D.P.R. 521, 525 (1983), expresamente resolvimos que "para determinar si existe o no una controversia de hecho un tribunal no tiene que limitarse a considerar las declaraciones que acompañan la moción, sino que puede tomar en cuenta todos los documentos obrantes en los autos".

Un examen minucioso de los documentos obrantes en autos nos mueve a concluir que no erró el foro de instancia al considerar la controversia respecto a la negligencia y al nexo causal, ya que la misma surgía de los documentos obrantes en autos. Sin embargo, un análisis de esos documentos nos mueve a concluir que el foro de instancia erró al determinar que no existe controversia de hecho en cuanto a que no hubo acto u omisión negligente por parte de Pavarini y Lord Mechanical, y que no hubo nexo causal entre la alegada negligencia y los daños ocurridos.

▬▬ Recientemente, en *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714 (1986), reiteramos que sólo puede dictarse sentencia sumaria cuando no existe una legítima controversia de hechos. Expresamente señalamos que:

> La sentencia sumaria es un remedio extraordinario que sólo debe ser concedido cuando el promovente ha establecido su derecho con claridad y ha quedado demostrado que la otra parte no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de las alegaciones que no hayan sido refutadas por la evidencia presentada con la moción.... La sentencia sumaria sólo debe dictarse en casos claros, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes. *Corp. Presiding Bishop CJC of LDS v. Purcell*, supra, págs. 720–721.

Aquí no se cumplen estos postulados. Por el contrario, surge de los documentos obrantes en autos que hay una controversia legítima sobre la alegada negligencia de Pavarini y Lord Mechanical.

En la moción presentada por Pavarini se señaló que la I.S.O., organización tarifadora en la industria de seguros, había realizado en 1979 unas inspecciones en el edificio Mercado Central Fase I y en su informe concluyó que en el mismo no existían *firewalls* y en

la parte superior de los *coolers* no existía un sistema de roceadores automáticos.

Los informes realizados por distintos peritos, con posterioridad a la ocurrencia del fuego, señalaron que los factores que propiciaron el incendio fueron: la falta de paredes cortafuego cada 9,000 pies cuadrados, la ausencia de roceadores automáticos en las áreas de almacenamiento frío y el almacenamiento de mercancía seca en áreas destinadas a almacenamiento frío. Estas conclusiones surgen del informe preparado por el perito Osvaldo Marcano en 15 de agosto de 1985, del informe preparado por el perito Robert Powers y del informe preparado por el perito Carlos V. Wheeler que expresamente concluyó:

> The evidence available indicate[s] that the lack of firewalls and the lack of water in the reserve water system were governing factors that permitted the rapid propagation of the fire and extent of the damages produced.
>
> In unprotected areas, such as in the refrigeration moduli of the subject building, there should have been firewalls separating areas no greater than 9,000 square feet. Consequently, the damages produced beyond such area, enclosing the origin of the fire, are due to the lack of firewalls. Caso Núm. RE-86-579, Exhibit VIII de la Solicitud de reconsideración, pág. 36.

Ciertamente, del informe preparado por la I.S.O. y de los informes preparados por los distintos peritos no se puede llegar a una determinación concluyente de que Pavarini y Lord Mechanical no fueron negligentes y que no hubo nexo causal entre su negligencia y los daños sufridos en el edificio.

Pavarini, en su Alegato en Oposición a Hanover Insurance Company, argumentó que él no intervino en la instalación de las paredes interiores del edificio ni en la instalación del sistema de roceadores automáticos. Surge de los documentos obrantes en autos que, en efecto, la instalación de las paredes interiores del edificio estuvo a cargo de J.F.B. Construction, quien fue contra-

tado directamente por CoDeCo para la realización de esa obra.(1) Sin embargo, surge del expediente que Lord Mechanical fue subcontratado por Pavarini para realizar la instalación del sistema de roceadores automáticos, y en la cláusula tercera del contrato se acordó que el trabajo sería realizado bajo la dirección de Pavarini y estaría sujeto a su aprobación. Tanto Pavarini como Lord Mechanical intervinieron en la construcción de una fase del edificio cuyas deficiencias aparentemente contribuyeron a la propagación del incendio.

Tomando en consideración los informes periciales, los contratos de construcción y los argumentos de las partes, concluimos que existe una controversia de hecho sobre si las actuaciones de Pavarini y Lord Mechanical fueron negligentes y contribuyeron a la propagación del incendio que destruyó el edificio ocupado por los demandantes. Ante estas circunstancias resolvemos que erró el foro de instancia al emitir la sentencia sumaria parcial que desestimó las reclamaciones contra Pavarini y Lord Mechanical.

## II

En la sentencia que estamos dejando sin efecto se concluyó que "[l]a fuente generadora y directa del daño fue el incendio que nada tiene que ver con las actuaciones u omisiones de Pavarini. Todo lo demás es especulativo y pretender imponer responsabilidad más allá de lo permitido por ley". Caso Núm. RE-86-498, *Exhibit* I de la Solicitud de revisión de 16 de octubre de 1986, pág. 14.

Los recurrentes, en la segunda controversia planteada ante nos, alegan que el foro de instancia erró al llegar a la conclusión de que no existe nexo causal entre la alegada negligencia de Pavarini y Lord Mechanical y los daños ocasionados por el incendio.

Un examen del contenido de los documentos obrantes en autos nos mueve a concluir que el foro de instancia erró al llegar

---

(1) En cuanto a la responsabilidad de la aseguradora de J.F.B. Construction, véase *Albany Ins. Co. v. Cía Des. Comercial P.R.*, 125 D.P.R. 421 (1990).

a una determinación concluyente, por vía de sentencia sumaria, de que no existe nexo causal entre la alegada negligencia de Pavarini y Lord Mechanical y los daños.

Surge del expediente que el incendio se originó en un área refrigerada del local ocupado por J.F. Montalvo, en el cual se estaba almacenando mercancía seca.[2] Hay prueba que indica que el mismo se propagó a otras áreas del edificio debido a los factores siguientes: a la instalación y funcionamiento inadecuado del sistema de roceadores automáticos, al hecho de que las válvulas de agua estaban cerradas y a la falta de *firewalls*.[3]

La prueba documental apoya la posible conclusión de que en el caso de autos intervinieron varios factores que originaron y propagaron el incendio. El incendio se originó, alegadamente, debido a la negligencia de los empleados de J.F. Montalvo al almacenar mercancía seca en un área destinada para refrigeración. La falta de roceadores automáticos en esa área aparentemente permitió que el incendio se propagara a las otras áreas del edificio y, en ausencia de *firewalls*, el mismo se fue extendiendo en proporciones mayores.

■■■ Desde el punto de vista jurídico, para que exista una causa de acción bajo el Art. 1802 del Código Civil de Puerto Rico, *supra*, es indispensable la relación causal entre el acto negligente y el daño. Así, en *Sociedad de Gananciales v. Jerónimo Corp.*, 103 D.P.R. 127, 134 (1974), resolvimos que en nuestra jurisdicción la doctrina que rige en lo referente al nexo causal es la doctrina de la causalidad adecuada, según la cual "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general". Reiteradamente hemos sostenido la validez de esta doctrina. *Cárdenas Maxán v. Rodríguez Rodríguez*, 125 D.P.R. 702 (1990); *Negrón*

---

[2] En el informe del incendio preparado por los bomberos, expresamente se señaló que el incendio se originó en una nevera de J.F. Montalvo.

[3] Se hizo constar en el Informe Preparado por el Ing. José Ayala, subjefe de la División de Prevención de incendios del Departamento de Bomberos de Puerto Rico, en el Informe del perito Carlos V. Wheeler, en el informe del INS Investigation Bureau y en el Informe del Ing. Dummond.

*García v. Noriega Ortiz*, 117 D.P.R. 570, 575 (1986); *Jiménez v. Pelegrina Espinet*, 112 D.P.R. 700 (1982); *Estremera v. Inmobiliaria Rac, Inc.*, 109 D.P.R. 852 (1980). Sin embargo, también hemos resuelto que hay ocasiones en que la causa de un accidente puede deberse a la negligencia de una o más de las partes involucradas en el mismo. En *Morales Muñoz v. Castro*, 85 D.P.R. 288, 295 (1962), expresamente resolvimos que "[s]i más de una [parte] fue negligente y el accidente se debió a la concurrencia de ambas negligencias, las dos partes son responsables de los daños causados".

En ese sentido, Herminio M. Brau del Toro, en su libro *Los daños y perjuicios extracontractuales en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1986, Vol. II, señala tres (3) situaciones distintas en las que puede darse la causalidad concurrente. En la primera vertiente contempla la situación en que dos (2) actores actúan concertadamente para infligir un daño; en la segunda vertiente contempla la situación en que dos (2) personas aportan actuaciones culposas que son autónomas, pero en un instante determinado coinciden en un punto dado y se suman para producir el resultado, y como tercera vertiente contempla aquella situación en que "dos actores aportan actuaciones culposas autónomas, que no se unen en la vertiente anterior, sino que actúan con sustancial contemporaneidad y la conducta culposa de uno pone en movimiento la agencia o fuerza interventora que como consecuencia *normal* —y por tanto, previsible— de ese acto culposo directamente causa el daño o, a la inversa, el acto culposo de uno contribuye y amplía, aumenta o agrava el daño causado por la conducta también culposa del otro, sin que medien, no obstante, las circunstancias que determinan que una causa suplanta, sustituye, interrumpe el nexo causal y ocupa el lugar de la primera convirtiéndose en la *causal legal* única del resultado dañoso, relevando por tanto de responsabilidad al primer actor negligente . . . ". Brau del Toro, *op. cit.*, pág. 718.

Las circunstancias presentes en el caso de autos nos mueven a concluir que estamos ante una situación de las comprendidas en la tercera vertiente señalada por el profesor Herminio Brau.

La prueba tiende a establecer que el incendio se originó y se debió al almacenamiento de mercancía seca en un área de refrigeración. Sin embargo, la situación se agravó al propagarse el incendio debido a la instalación inadecuada de los roceadores automáticos, a la ausencia de *firewalls* y a la falta de agua en el sistema debido a que las válvulas no estaban funcionando. Todos estos factores aparentemente contribuyeron a la ocurrencia y propagación del incendio.

La conclusión sobre la existencia de relación causal presupone una determinación previa de negligencia. Corresponderá al foro de instancia apreciar la prueba que aporten las partes para determinar si estos factores que ocasionaron el daño fueron producto de la negligencia de las partes codemandadas en el caso de autos y hacer una determinación afirmativa de negligencia y nexo causal y el por ciento de responsabilidad, si alguna, de las partes individuales y sus aseguradoras.[4]

Vista la conclusión a la cual hemos llegado, resulta innecesario que nos expresemos en este momento sobre el señalamiento de error apuntado en el Recurso RE-86-498 que alega que erró el foro de instancia al no imponer el pago de honorarios de abogado a favor de las partes demandantes.

### III

Las aseguradoras de las arrendatarias aducen como error la desestimación de su demanda contra Pavarini. Alegan las aseguradoras que la conclusión del tribunal que deniega el derecho de las compañías a subrogarse en la posición de sus asegurados es errónea. Entendemos que le asiste la razón. Veamos.

El Código de Seguros, en su Art. 1.020 (26 L.P.R.A. sec. 102), define "seguro" de la forma siguiente:

"Seguro" es el contrato mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico

---

(4) Debe el tribunal de instancia determinar si es este caso de concurrencia de causas, y si ello es así, cuál de las causas es la eficiente. *Cárdenas Maxán v. Rodríguez Rodríguez*, 125 D.P.R. 702 (1990).

o determinable al producirse un suceso incierto previsto en el mismo.

En términos generales se ha comentado sobre seguros:

. . . "insurance" is a contract to pay a sum of money upon the happening of a particular event or contingency, or indemnity for loss in respect of a specified subject by specified perils, that is, an undertaking by one party to protect the other party from loss arising from named risks, for the consideration and upon the terms and under the conditions recited. *2 Couch on Insurance 2d (Ed. rev.)* Sec. 1:2 (1982).

En relación con las pólizas de seguro de fuego (*fire insurance*) nos dice Couch:

Fire policies generally cover losses regardless of the cause of the fire including the negligence of the insured. . . . Nearly all polic[i]es insure against "direct loss" and such a term does not refer to the reason for the fire but the relationship between the fire and the damage to the property. *Couch*, supra, Sec. 1:51, pág. 121.

■ El seguro es uno de los mecanismos para enfrentar la carga financiera que podría causarnos la ocurrencia de un evento específico. Los aseguradores, mediante el contrato otorgado entre las partes, asumen la carga económica de los riesgos transferidos. Se trata de un contrato voluntario donde se establece un pago por la asunción de estos riesgos:

The primary requisite essential to a contract of insurance is the assumption of a risk of loss and the undertaking to indemnify the insured against such loss.

It is characteristic of insurance that a number of risks are accepted, some of which will involve losses, and that such losses are spread over all the risks so as to enable the insurer to accept each risk at a slight fraction of the possible liability upon it. Many definitions of insurance which emphasize this requisite have been given by the courts. *Couch*, supra, Sec. 1:3, págs. 6–8.

Se ha resuelto al respecto que:

. . . [T]he concept of "insurance" involves some investment risk-taking on the part of the company. *S.E.C. v. Variable Annuity Co.*, 359 U.S. 65, 71 (1959).

■ La asunción de riesgos es uno de los elementos princi-
pales de este tipo de contrato de seguro. Con relación a la prima
o pago a cambio de ese riesgo se discute:

> Insurers are in the business of the acceptance of risks in return
> for compensation paid by the insured in the form of the policy
> premium. *Couch*, supra, Sec. 1:22, pág. 37.
>
> Fire Insurance is a contract, whereby one, for a fixed consideration,
> usually paid in advance and customarily called a premium, agrees to
> indemnify another in whole or in part up to a specified amount for loss
> or damage to designated property by fire. (Escolios omitidos.) *Couch*,
> supra, Sec. 1:51, pág. 121.

■ Como hemos podido observar, en los contratos de
seguro se transfiere el riesgo a la aseguradora y surge una
obligación por parte de ésta de responder por los daños económi-
cos al asegurado de ocurrir el evento. Al resarcir económicamente
al asegurado, la compañía aseguradora se pone en la posición de
éste con relación a todas las acciones y los remedios a los cuales
tiene derecho. Ocurre lo que llamamos "el derecho a la subroga-
ción".

Acerca de la subrogación nos dice Couch:

> Subrogation is the right of the insurer to be put in the position of
> the insured in order to pursue recovery from third parties legally
> responsible to the insured for a loss paid by the insurer. (Escolios
> omitidos.) *Couch*, supra, Sec. 61:1, pág. 75.
>
> It is clear that the insurer has the legal right to place subrogation
> agreements in their policies so long as they do not contravene
> applicable statutes. (Escolios omitidos.) *Couch*, supra, Sec. 61:2,
> págs. 75–76.
>
> An insurer has the right to recover, by way of subrogation, for
> damages, that it has been call[ed] upon to pay to an insured under
> its policy. The subrogation of an indemnity insurer arises by
> operation of law when it makes payment to the insured, that is, the
> payment of an obligation by a surety ordinarily entitles him to
> subrogation of all the rights, remedies, and equities of the obligee.
> (Escolios omitidos.) *Couch*, supra, Sec. 61:4, pág. 76.

Por otro lado, el propio tribunal sentenciador reconoce el
derecho a la subrogación por parte de las aseguradoras que

indemnizan a sus asegurados e incluso nos dice que "el asegurador s[ó]lo puede ejercitar las acciones que tendría disponibles el asegurado contra el tercero causante del daño por el cual éste indemnizó". Caso Núm. RE-86-498, *Exhibit* I de la Solicitud de revisión de 16 de octubre de 1986, pág. 14.

No obstante, el tribunal concluyó que las aseguradoras de las arrendatarias no tenían derecho a subrogarse en los derechos del asegurado.

Fundamentó su resolución en el hecho de que las aseguradoras, al otorgar el contrato de seguro, conocían los defectos en los locales y cobraron la tarifa en proporción a esos defectos. En otras palabras, el tribunal resolvió que las compañías asumieron el riesgo y que por tal razón se veían impedidas por su propios actos de pedir alguna indemnización.

Estamos de acuerdo con que las aseguradoras asumieron ciertos riesgos y que incluso la asunción de los mismos fue parte esencial en las primas a pagarse y el contrato otorgado. No obstante, de eso precisamente es que se trata: la función de las compañías aseguradoras es asumir el riesgo del asegurado. El propósito de estas compañías no es evitar las pérdidas sino aliviar la carga financiera que éstas representarían. Mientras mayor el riesgo, más dinero paga el asegurado para transferir su riesgo a las compañías aseguradoras. No debemos confundir esta relación contractual entre asegurado y aseguradora con el derecho que surge a la subrogación luego de que la aseguradora responde económicamente al asegurado por la pérdida ocurrida.

Al surgir el derecho a la subrogación, la causa de acción de la aseguradora ante terceros causantes del daño surge del Art. 1802 del Código Civil de Puerto Rico, *supra*. La subrogación en cuestiones de seguro ha sido ampliamente reconocida por las cortes y los tratadistas sobre la materia. Véanse: *Appleman, Insurance Law and Practice* (1964); Huelsner, Black, Clive, *Property and Liability Insurance*, 3ra ed., Prentice Hall, 1982; *Couch*, supra.

En *Travelers Indem. Co. v. United States*, 543 F.2d 71, 75 (9no Cir. 1976), el tribunal federal expresó:

> Clauses permitting the insurer to be subrogated to rights of the insured, resting as they do on equitable doctrines, are designed to permit the insurer to affix responsibility for the loss on the person who in equity and good conscience ought to pay it.

Vista la conclusión a la cual hemos llegado de que existe la posibilidad de que Pavarini haya sido responsable en parte por el daño causado, entendemos que erró el tribunal de instancia al desestimar la causa de acción de las aseguradoras contra Pavarini, toda vez que existe un derecho por parte de las compañías a subrogarse y anteponer cualquier derecho o causa de acción que tenga el asegurado.

## IV

Finalmente, nos resta considerar la controversia planteada en el Recurso RE-86-578. El mismo cuestiona la corrección de las sentencias sumarias parciales emitidas por el foro de instancia en las que concluyó que el incendio se originó en el local ocupado por J.F. Montalvo, por lo que la pérdida de la cosa arrendada no se debió a la culpa de las restantes arrendatarias, y en ese sentido quedó rebatida la presunción establecida en el citado Art. 1453 del Código Civil de Puerto Rico.

La recurrente CoDeCo alega que el foro de instancia erró al dictar las sentencias sumarias parciales, ya que las arrendatarias no demostraron que el incendio ocurrió por un suceso imprevisto y tampoco hicieron mención de la causa del incendio. Concluimos que a la recurrente no le asiste la razón.

■ El Art. 1453 del Código Civil de Puerto Rico, *supra*, dispone lo siguiente:

> El arrendatario es responsable del deterioro o pérdida que tuviere la cosa arrendada, a no ser que pruebe haberse ocasionado sin culpa suya.

El citado artículo establece una presunción que el arrendatario puede rebatir demostrando que la pérdida de la cosa ocurrió sin que mediara negligencia suya. En ese sentido, Manuel

Albaladejo, en *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Edersa, 1980, T. XX, Vol. I, pág. 411, señala que:

> Una vez sentado que existen tales deterioros o pérdidas, por aceptarlo así el arrendatario o no haber podido probar que la cosa la recibió en tal estado, todavía podrá el arrendatario eximirse de responsabilidad probando que tal deterioro o pérdida se ha producido sin culpa suya (Art. 1.563) o por la acción del tiempo o por causa inevitable como dice el artículo 1.561.

■ El Código Civil de Puerto Rico, al igual que el español, no considera específicamente la situación en que la pérdida de la cosa arrendada se debe a un incendio. Sin embargo, los tratadistas españoles han concluido que esta situación se rige por la presunción establecida en el Art. 1563 del Código Civil español, equivalente a nuestro Art. 1453, *supra,* por lo que al arrendatario se le exime de responsabilidad si demuestra que en el incendio no medió negligencia de su parte. Albaladejo, *op. cit.,* pág. 412. Citamos de J.M. Manresa y Navarro, *Comentarios al Código Civil español,* 6ta ed. rev., Madrid, Ed. Reus, 1969, T. X, Vol. II, pág. 203:

> Nuestro Código, como antes hemos indicado, no habla del caso de incendio; m[a]s como no debe lógicamente pensarse que ha sido su propósito dejarlo sin solución en la práctica, hay que acudir en busca de ella, como también hemos dicho a aquellos artículos que por la generalidad de su doctrina cabe estimar que lo comprenden. Estos artículos son los que comentamos y el 1.568 sus concordantes.
>
> Del examen en conjunto de todos ellos se deduce si el arrendatario es responsable del deterioro o pérdida que tuviese la cosa arrendada, *a no ser que pruebe haberse ocasionado sin culpa suya* (artículo 1.563); que si él mismo debe devolver la finca tal como la recibió, salvo lo que hubiere perecido o se hubiera menoscabo por el tiempo o *por causa inevitable* (artículo 1.561), y que si cuando la cosa se pierde en poder del deudor, *se presume que la pérdida ocurrió por su culpa y no por caso fortuito* (artículo 1.568 en relación con los 1.182 y 1.183), es ineludible la consecuencia de que el arrendatario debe probar, para eximirse la responsabilidad, que en el hecho del incendio no ha habido por su parte culpa ni negligencia. (Énfasis en el original.)

Idéntico enfoque hemos seguido en nuestra jurisprudencia interpretativa del antes citado Art. 1453 del Código Civil nuestro. En *Cabinero v. Cobián Theatres*, 81 D.P.R. 960, 978 (1960) (seguido en *Double AA Prop. Corp. v. E.L.A.*, 109 D.P.R. 235 (1979)), expresamente resolvimos que:

> Por lo menos en lo que respecta al caso de incendio de la propiedad arrendada, hemos seguido la fórmula de exclusión en la consideración del caso fortuito. Nuestras decisiones anteriores no impusieron al arrendatario la obligación de probar afirmativamente la causa fortuita del fuego, sólo le exigimos que probara su falta de culpa en el evento. No otra podría ser la doctrina nuestra pues si bien el Art. 1451 declara la obligación del arrendatario de devolver la propiedad después de usarla en el estado en que la tomó salvo lo parecido o deteriorado por causa inevitable, que es decir caso fortuito, cuando de su responsabilidad se trata por la pérdida efectivamente acaecida de la cosa, el Código lo exonera si prueba que se ocasionó sin culpa suya, según dispone el Art. 1453, y por referencia del 1458, el Art. 1136. Al presumir el 1137 la culpa del arrendatario y no el caso fortuito, arroja sobre aquél la carga o peso de probar la inexistencia de su culpa, pero no le obliga, como afirmativamente le requiere el Código francés en su Art. 1733, a probar la causa fortuita —hecho que no pudo prevenir o previsto era inevitable— del incendio.

A base de la doctrina esbozada, podemos concluir que en el caso de autos no erró el foro de instancia al desestimar las demandas instadas por CoDeCo contra las arrendatarias del edificio comercial. Un examen del recurso demuestra que no existe controversia en cuanto al hecho de que no medió negligencia de las arrendatarias en el origen y en la propagación del incendio, al contrario, los documentos obrantes en autos confirman la conclusión de la sala sentenciadora de que el incendio se originó en el local ocupado por J.F. Montalvo. En esas circunstancias, no erró el foro de instancia al negarse a desestimar la demanda contra J.F. Montalvo y al desestimar la misma contra el resto de las arrendatarias. Albaladejo prevé la situación específica en que varios arrendatarios ocupan la propiedad arrendada que se incendió y señala que:

. . . todos y cada uno de los arrendatarios podrán eximirse de responsabilidad: si prueba que el incendio no se originó o no se pudo originar en su piso o local; si prueba que el incendio ha empezado en el piso o local de otro en cuyo caso éste sólo será responsable; si prueban que el fuego ha empezado en una casa distinta en cuyo caso todos quedarían exentos de responsabilidad; y si prueban que el incendio es debido a caso fortuito o fuerza mayor, y entonces también quedarán todos exentos de responsabilidad. Albaladejo, *op. cit.*, pág. 413.

Resolvemos que al no existir controversia de hecho sobre la ausencia de negligencia de las arrendatarias, actuó correctamente el foro de instancia en la aplicación del derecho.

Por los fundamentos expuestos, *confirmamos las sentencias sumarias parciales que desestimaron la acción instada contra las arrendatarias, revocamos la Sentencia Sumaria Parcial que desestimó las acciones instadas contra Pavarini y Lord Mechanical, y ordenamos que se continúen los procedimientos a tenor con los pronunciamientos aquí expuestos.*

La Juez Asociada Señora Naveira de Rodón concurre con las partes I y II y está conforme con las partes III y IV. El Juez Presidente Señor Pons Núñez y el Juez Asociado Señor Negrón García se inhibieron. El Juez Asociado Señor Rebollo López no intervino.