*693 TEXTO COMPLETO DE LA SENTENCIA
Comparecen los demandantes-apelantes, Pedro González Sánchez, Magali Cintrón Rivera y la Sociedad de Bienes Gananciales que componen, solicitando la revisión de una sentencia sumaria enmendada del Tribunal de Primera Instancia, Sala Superior de Bayamón, dictada el 23 de octubre de 2007, archivada en autos copia de su notificación el 20 de noviembre de 2007. En la sentencia apelada el foro de instancia desestimó con perjuicio la demanda sobre cobro de dinero y daños y perjuicios presentada, en contra de las demandadas-recurridas, la Cooperativa de Seguros de Vida de Puerto Rico (COSVI) y la Cooperativa de Ahorro y Crédito La Regla de Oro (la Cooperativa). De dicha sentencia se presentó una oportuna reconsideración que fue rechazada de plano por el tribunal sentenciador.
Con el beneficio de la comparecencia de las partes, procedemos a resolver CONFIRMANDO la sentencia apelada. Exponemos.
*694 I
El siguiente recuento de hechos no está en controversia.
El 1 de octubre de 1993, COSVI expidió la póliza 02-559 sobre seguro colectivo de vida de crédito a favor de la Cooperativa. Dicha póliza provee una cubierta de seguro colectivo de vida de crédito, el cual contiene un endoso de incapacidad total y permanente, con cubierta máxima de $10,000.00 a 1 de octubre de 1993 y de $30,000.00 a 1 de febrero de 2000. El endoso de incapacidad física total y permanente para dicha póliza también fue adquirido el 1 de octubre de 1993.
El 13 de octubre de 2001, Pedro González Sánchez advino deudor de la Cooperativa al originar un préstamo de $20,000.00. Al momento de originar su financiamiento con la Cooperativa, éste se acogió al seguro colectivo de vida de crédito con beneficio por incapacidad física total y permanente suscrito por COSVI a favor de la Cooperativa. En esa fecha, el 13 de octubre de 2001, recibió y suscribió el Certificado de Póliza de Seguro Colectivo de Vida de Crédito con Beneficio Adicional por. Incapacidad Física Total y Permanente emitido por COSVI, que contiene un resumen de las disposiciones más importantes de la póliza. Además, suscribió y firmó un Acuse de Recibo que contiene el referido certificado.
En lo pertinente, el 28 de abril de 2006, el demandante-apelante fue incapacitado por la Administración del Seguro Social Federal, efectivo el 1 de abril de 2004. De dicha determinación surge que la incapacidad del demandante se debe a una condición siquiátrica severa. En específico se dispuso:
“The claimant has the following severe impairment: major depressive disorder. The claimant has the following not severe impairments: hypertension, lumbar myositis and alcohol dependence in complete remission (20 CFR 404.1520(c)). The major depressive disorder cause significant limitation in the claimant’s ability to perform basic work.” Véase, Anejo XVIII, pág. 74, apelantes.
Por otra parte, desde el 31 de diciembre de 2005, la parte demandante-apelante suscribió una solicitud de beneficios para reclamar cubierta bajo el endoso de incapacidad física total y permanente que tiene COSVI a favor de la Cooperativa. Mediante carta cursada el 9 de agosto de 2006, COSVI denegó su solicitud. Solicitada la reconsideración, el 28 de septiembre de 2006, COSVI se sostuvo en la denegatoria de los beneficios por razón de que la condición física diagnosticada a González Sánchez sólo le incapacita de forma parcial y permanente y, además, la incapacidad total y permanente surge de una condición mental que no está cubierta por la póliza.
De la póliza bajo la cual los demandantes-apelantes reclaman a COSVI surge que la condición de naturaleza emocional y/o psiquiátrica que da lugar a su alegada incapacidad no está cubierta por el endoso emitido por COSVI. El Endoso de Seguro Colectivo de Vida de Crédito, Beneficio por Incapacidad Física Total y Permanente, firmado el 1 de octubre de 1993, dispone en lo pertinente:

“Limitaciones

Este endoso no cubre:

[■■■]

b- La incapacidad física total y permanente del deudor asegurado como resultado de todo tipo de neurosis o desórdenes siconeuróticos, desórdenes de personalidad, ansiedad, desórdenes sicosomáticos, psicosis, esquizofrenia, paranoia, depresión unipolar, depresión bipolar, dependencia de licor, adicción a drogas, retardación mental u otra condición o desorden mental, sea ésta o no causada o agravada por cualquier otra enfermedad, accidente o trauma.” Véase, Anejo XVIII, pág. 60.
*695 Por su parte, el 23 de octubre de 2006, la parte demandante-apelante presentó una demanda de cobro de dinero y daños y perjuicios en contra de la Cooperativa y COSVI. A su vez, el 16 de enero de 2007 enmendaron sus alegaciones mediante la presentación de una demanda enmendada. En la misma, alegan que González Sánchez estuvo pagando puntualmente el préstamo de $20,000.00 con sus ahorros cuando estaba incapacitado y que posteriormente se enteró a través de los oficiales de la Cooperativa que el préstamo tenía un “seguro de vida e incapacidad” desde que lo adquirió. Además, añaden que nunca se le explicó la existencia de dicha póliza, la naturaleza de sus exclusiones ni que tenía derecho a escoger la compañía aseguradora de su preferencia. Señalan que COSVI denegó en reconsideración la cubierta del seguro porque la misma excluye las enfermedades mentales, como es la condición que lo afecta. Subrayan que de haber tenido conocimiento de la naturaleza y extensión de las exclusiones, no se hubiese adquirido la póliza, por lo que su consentimiento estuvo viciado. A su vez, aducen que la inclusión de la póliza de incapacidad dentro del contrato de préstamo sin explicación constituye un contrato de adhesión y se debe penalizar por el engaño que se comete. Por último, puntualizan que a pesar de que la Cooperativa tenía conocimiento de su incapacidad le informaron a Trans Union, entidad que emite informes de crédito, que éste había dejado pendiente de pago $11,934.00, cantidad que tiraron a pérdida, actuación que afectó y agravó su historial de crédito. Por lo anterior, los demandantes-apelantes reclamaron daños y perjuicios.
En respuesta a la demanda enmendada, la Cooperativa y COSVI, respectivamente, presentaron solicitudes de sentencia sumaria. Dichas solicitudes fueron replicadas por los demandantes-apelantes. Evaluados los argumentos de las partes, el Tribunal de Instancia determinó que la parte demandante-apelante no ofreció evidencia que justificara que su alegada incapacidad fuese física total y permanente. Al contrario, determinó que su incapacidad es de naturaleza siquiátrica y/o emocional que no están cubiertas bajo el endoso de incapacidad física total y permanente. Así las cosas, dictó sentencia archivando con perjuicio la demanda en contra de la Cooperativa y COSVI. Inconforme, la parte apelante nos presenta el siguiente señalamiento de error a considerar:

“Erró el Tribunal de Primera Instancia al desestimar la demanda bajo el mecanismo de sentencia sumaria por razón de que la póliza de incapacidad excluye las condiciones emocionales cuando la demanda fue enmendada con el permiso de Instancia y expone una nueva teoría basada en error en el consentimiento y no en las exclusiones de la póliza, situación que estaba en controversia en el caso, por lo que no procedía una sentencia sumaria. ”

II
A. Consideraciones Generales sobre el Contrato de Seguros
El contrato de seguro está definido como aquél mediante el cual una persona se obliga a indemnizar, pagarle o proveerle un beneficio específico o determinable a otra persona cuando se produce un suceso incierto previsto en el mismo. Art. 1 del Código de Seguros de Puerto Rico, 26 L.P.R.A. see. 102; Coop. Ahorro y Créd. Oriental v. S.L.G., 158 D.P.R. 714, 721 (2003); Aseg. Lloyd’s London v. Cia. Des. Comercial, 126 D.P.R. 251, 266 (1990). Al igual que todo contrato, el de seguro constituye la ley entre las partes si concurren los requisitos del consentimiento, el objeto cierto y la causa de la obligación, y no sean contrarios a la ley y orden público. Art. 1230 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 3451; López Castro v. Atlantic Southern Ins. Co., 158 D.P.R. 562, 568 (2003); Coop. Ahorro y Cred. Oriental v. S.L.G., supra.
El contrato de seguro debe interpretarse globalmente a partir del conjunto total de sus términos y condiciones según se expresen en la póliza y sean ampliados, extendidos o modificados por cualquier aditamento, endoso o solicitud que sean añadidos a la póliza para formar parte de ésta. Art. 11.250 del Código de Seguros de Puerto Rico, 26 L.P.R.A. see. 1125. Además, por entenderse un contrato de adhesión debe interpretarse liberalmente en beneficio del asegurado. No obstante, si los términos del contrato de seguro son claros, específicos y no dan margen a ambigüedades o diferentes interpretaciones, se hará valer la clara *696 voluntad de las partes. (Énfasis nuestro). Monteagudo v. E.L.A., 2007 J.T.S. 159; 172 D.P.R. _ (2007). Asimismo, una cláusula clara y libre de ambigüedades que favorece al asegurador debe considerarse obligatoria para el asegurado. (Énfasis nuestro). López Castro v. Atlantic Southern Ins. Co., supra.
El contrato de seguro de crédito protege contra pérdidas o daños resultantes por la falta de pago al asegurado por los deudores de éste. Art. 4.080 del Código de Seguros de Puerto Rico, 26 L.P.R.A. see. 408(9). Al determinar cuáles son los riesgos cubiertos por la póliza de seguro, es necesario considerar si en el contrato figura alguna “cláusula de exclusión”. Estas cláusulas tienen el propósito de limitar la cubierta establecida en el acuerdo principal y disponen que el asegurador no responderá por determinados eventos, riesgos o peligros. Monteagudo v. E.L.A., supra. Por esta razón, las exclusiones se deben interpretar restrictivamente a favor del asegurado, para así cumplir con el propósito de todo seguro de ofrecer la mayor protección a la persona asegurada. Marín v. American Internacional Ins. Co., 137 D.P.R. 356, 362 (1994); Rivera Robles v. Ins. Co. of Puerto Rico, 103 D.P.R. 91, 93 (1974).
B. Error en el Consentimiento
Se presume la validez del consentimiento y del contrato en que el mismo fue prestado. Capó Caballero v. Ramos, 83 D.P.R. 650, 673 (1961). Por eso, la existencia de error, violencia, intimidación o dolo que vicien el consentimiento constituye una cuestión de hecho que tiene que ser probada por quien la alegue. Colón Rivera v. Promo Motors Imports, Inc., 144 D.P.R 659 (1997); Carrasquillo v. Lippitt & Simonpietri, Inc., 98 D.P.R. 659, 662 (1970); Cruz v. Liverpool & London Ins. Co., 79 D.P.R. 722 (1956).
A la luz del derecho vigente, [s]erá nulo el consentimiento prestado por error, violencia, intimidación o dolo. Artículo 1217 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 3404. No obstante, no todo error tiene como resultado la invalidez de la obligación contractual. Para que el error invalide el consentimiento, deberá recaer sobre la sustancia de la cosa que fuere objeto del contrato, o sobre aquellas condiciones de la misma que principalmente hubieren dado motivo a celebrarlo. Artículo 1218 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 3405.
En lo pertinente, el Código Civil dispone que pueden ser objeto de contrato todas las cosas que no están fuera del comercio de los hombres, además de. todos los servicios que no sean contrarios a las leyes o a las buenas costumbres. Artículo 1223 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 3421. Es menester señalar que la palabra sustancia no se limita al término materia de la cosa, sino que puede referirse también a las cualidades que el contratante tuvo en mente principalmente; o sea, aquello que le motivó a contratar. Cooperativa La Sagrada Familia v. Castillo Sánchez, 107 D.P.R. 405 (1978).
Para que quien impugna la validez de un contrato, por causa de un alegado error, merezca la protección de la ley, el error ha de ser de la clase que no se haya podido evitar con una regular diligencia. (Énfasis nuestro). Cooperativa La Sagrada Familia v. Castillo Sánchez, supra. Un error que se haya podido evitar con una regular diligencia no puede ser invocado por el que haya incurrido en él para anular la declaración. De otra parte, es mucho menos admisible el error cuando quienes contratan son personas peritas o conocedoras del respectivo negocio. Capó Caballero v. Ramos, supra.
El término diligencia ordinaria se define como aquel grado de precaución y cuidado que personas de prudencia ordinaria ejercitan en sus asuntos, en el país y en la época en que viven. Véase, Ignacio Rivera García, Diccionario de Términos Jurídicos, pág. 75 (2000). Por su parte, el Tribunal Supremo ha tratado el concepto diligencia ordinaria como análogo a la frase buen padre de familia. Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8 (1987).
*697 Con relación a si es o no excusable el error, Diez Picazo señala que [e]s inexcusable el error, cuando pudo ser evitado empleando una diligencia media o regular. La diligencia se aprecia, además, teniendo en cuenta las condiciones de las personas. Es exigible mayor diligencia cuando se trata de un profesional o de un experto. Diez-Picazo L., Fundamentos de Derecho Civil Patrimonial, 5taed., Madrid, Ed. Civitas, 1996, Vol. I, Cap. VII, pág. 184. Lo determinante es cómo se hubiese desenvuelto en una situación parecida una persona de prudencia común u ordinaria. López v. Porrata Doria, 2006 J.T.S. 158, 169 D.P.R. _ (2006).
C. Sentencia Sumaria
La moción de sentencia sumaria tiene como propósito principal propiciar la resolución justa, rápida y económica de litigios que no presenten controversias genuinas respecto a hechos materiales y que consecuentemente no ameriten la celebración de un juicio en su fondo. Pilot Life Insurance Company v. Crespo Martínez, 136 D.P.R. 624 (1994). En nuestro ordenamiento jurídico se puede dictar una sentencia sumaria a favor del promovente sobre la totalidad o cualquier parte de la reclamación solicitada cuando no existe una controversia esencial en cuanto a los hechos y procede la misma como cuestión de derecho. Corp. Presiding Bishop v. Purcell, 117 D.P.R. 714 (1986). Procede la sentencia sumaria cuando de los documentos admisibles en evidencia surge que no existe una legítima disputa de hechos y sólo resta la aplicación del derecho. Pérez v. El Vocero de P.R., 149 D.P.R. 427 (1999).
La sentencia sumaria es un mecanismo procesal extraordinario cuyo objetivo es la solución justa y rápida de litigios y casos civiles que no presenten controversias de hechos materiales. E.L.A. v. Cole Vázquez, 2005 J.T.S. 55, 164 D.P.R. _ (2005). Por ser un remedio discrecional extraordinario sólo debe concederse cuando el tribunal tenga ante sí todos los hechos pertinentes y surja claramente de los documentos la existencia de un derecho. PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. 881 (1994).
Las Reglas de Procedimiento Civil establecen que se dictará sentencia sumaria inmediatamente cuando de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones, en unión a declaraciones juradas, si las hubiere, se demuestra que no hay una controversia real sustancial en cuanto a ningún hecho material y procede en derecho a favor de la parte promovente. Regla 36.3 de Procedimiento Civil, supra; Corp. Presiding Bishop v. Purcell, supra. Asimismo, una parte contra la cual se presenta una demanda podrá, en cualquier momento, presentar una moción basada o no en declaraciones juradas para que se dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación. Regla 36.2 de Procedimiento Civil, supra.
Cuando se considera la moción de sentencia sumaria, se ha de presumir ciertos todos los hechos no controvertidos que constan en los documentos y declaraciones juradas admisibles que la acompañen. Corp. Presiding Bishop v. Purcell, supra. La jurisprudencia del Tribunal Supremo ha establecido que sólo debe dictarse cuando el promovente ha establecido su derecho con claridad y ha quedado demostrado que la otra parte no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de la prueba. Medina v. M. S. & D. Química de P.R., Inc., 135 D.P.R. 716, 734-735 (1994).
Para derrotar una solicitud de sentencia sumaria, la parte opositora debe presentar documentos que controviertan los hechos presentados por el promovente, de lo contrario se expone a una sentencia en su contra sin la celebración de un juicio en su fondo. Toledo Maldonado v. Cartagena Cruz, 132 D.P.R. 249 (1992). Sabido es que, de ordinario, el tribunal examinará la evidencia ante sí de la forma más favorable para el promovido. Pérez v. El Vocero de P.R., supra.
En nuestro ordenamiento jurídico, una parte tiene derecho a un juicio plenario cuando existe la más leve o mínima duda en cuanto a cuáles son los hechos del caso. Mercado Riera v. Mercado Riera, 87 D.P.R. 566 (1963). Por tanto, toda duda respecto a la existencia de una controversia real debe ser resuelta en contra de quien solicita la sentencia sumaria. Cruz v. Sánchez, 2007 J.T.S. 203, 172 D.P.R. _ (2007). Toda inferencia *698 razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, se debe evaluar desde el punto de vista más favorable al que se opone a la solicitud. E.L.A. v. Cole, supra.
D. Revisión de la Determinación de Instancia sobre una Sentencia Sumaria
Al revisar una determinación del T.P.I. sobre una solicitud de sentencia sumaria, este foro apelativo está limitado a considerar los documentos que se presentaron ante el tribunal apelado y sólo podrá determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. Vera Morales v. Bravo Colón, 161 D.P.R. 308 (2004). Así las cosas, no puede el foro apelativo adjudicar los hechos materiales y esenciales en disputa, toda vez que esa función le corresponde al tribunal de instancia. Id.
De ordinario, el ejercicio de las facultades discrecionales por el foro de instancia merece nuestra deferencia. Por tal razón, sólo se debe intervenir con el ejercicio de la discreción en aquellas situaciones en que se demuestre que el foro recurrido actuó con prejuicio o parcialidad, o incurrió en un craso abuso de discreción, o se equivocó en la interpretación de cualquier norma procesal o de derecho sustantivo. Lluch v. España Service, 117 D.P.R. 729, 745 (1986).
El Tribunal Supremo ha establecido que se incurre en abuso de discreción cuando un juez: (1) no toma en cuenta un hecho material que no podía ser pasado por alto; (2) le concede gran peso a un hecho irrelevante y basa su decisión exclusivamente en el mismo; o (3) considera todos los hechos materiales y descarta los irrelevantes, pero los sopesa livianamente. Ramírez Ferrer v. Policía de Puerto Rico, 158 D.P.R. 320 (2002). Por otro lado, si la actuación del tribunal no está desprovista de base razonable ni perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de instancia a quien corresponde la dirección del proceso. Sierra v. Tribunal Superior, 81 D.P.R. 554 (1959).
Cuando de prueba documental se trata, un tribunal apelativo se encuentra en igual posición que el foro de primera instancia respecto a la evaluación de la prueba, y por tanto, está facultado para apreciarla apoyándose en su propio criterio. Rebollo v. Yiyi Motors, 161 D.P.R. 69 (2004). Abonando a lo anterior, el Tribunal Supremo ha señalado que no se debe intervenir con las sentencias u órdenes apeladas a menos que un análisis sereno y desapasionado de la prueba nos convenza de que las determinaciones de hechos formuladas por el Tribunal de Instancia no representan el balance más racional, justiciero y jurídico de la totalidad de la evidencia que desfilara ante él. Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172 (1985).
En base a lo anterior, aunque haya evidencia que sostenga las conclusiones de hechos del tribunal a quo, si de un análisis de la totalidad de la evidencia el tribunal apelativo queda convencido de que se cometió un error, como por ejemplo cuando las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida, se considerarán claramente erróneas. Abudo Servera v. A.T.P.R., 105 D.P.R. 728 (1977).
III
Nos corresponde resolver si erró el foro de instancia al desestimar la sentencia sumaria basado en que la póliza de incapacidad excluye las condiciones emocionales aun cuando la parte demandante presenta una teoría de error o vicios en el consentimiento que crea una controversia. Entendemos que no se cometió el aludido error.
En lo pertinente, las alegaciones de la demanda enmendada señalan que al apelante no se le explicó la existencia de la póliza en controversia, la naturaleza de sus exclusiones y su derecho a escoger la compañía aseguradora de su preferencia. Además, exponen que de haber tenido conocimiento de la naturaleza y extensión *699 de las exclusiones, no se hubiese adquirido la póliza, por lo que su consentimiento estuvo viciado. Véase, Anejo XI, págs. 32-33, apelantes.
Del Certificado de Póliza de Seguro Colectivo de Vida de Crédito con Beneficio Adicional por Incapacidad Física Total y Permanente surge que [e]ste seguro es opcional y no es una condición para obtener el préstamo. (Énfasis nuestro). Véase, Anejo XX, pág. 17, apelantes. Además, de dicho documento surgen los términos y condiciones de la referida póliza. Incluso, se advierte que la cubierta es para incapacidad física total y permanente, concepto que se define. Más relevante aún, entre las exclusiones se dispone que no se cubre la incapacidad física total y permanente [q]ue sea resultado de todo tipo de neurosis o desórdenes siconeuróticos, desórdenes de personalidad, ansiedad, desórdenes sicosomáticos, psicosis, esquizofrenia, paranoia, depresión unipolar, depresión bipolar, dependencia del licor, adicción a drogas, retardación mental u otra condición o desorden mental, sea ésta o no causada o agravada por cualquier otra enfermedad, accidente o trauma. (Énfasis nuestro). Véase, Anejo XX, págs. 17-18, apelantes. Esta exclusión también se encuentra comprendida en el Endoso de Seguro Colectivo de Vida de Crédito, Beneficio por Incapacidad Física Total y Permanente que dispone que ese tipo de incapacidad física total y permanente no está cubierta por la póliza. Más aún, es de particular relevancia que el Certificado de Póliza de Seguro Colectivo de Vida de Crédito con Beneficio Adicional por Incapacidad Física Total y Permanente incluye un acuse de recibo, que aparece suscrito por el apelante, [1] y lee como sigue:
Recibí hoy, día 13 de octubre de 2001, el Certificado del Seguro Colectivo de Vida de Crédito emitido por la Cooperativa de Seguros de Vida de Puerto Rico, COSVI, el cual evidencia la cubierta del seguro para el préstamo que se me está otorgando, siempre y cuando cumpla con los requisitos aquí promulgados y establecidos en la Póliza Matriz y sus Endosos. Véase, Anejo VI, pág. 18, apelantes.
Resulta claro que la incapacidad del apelante tiene su base en una condición siquiátrica severa que está excluida de las cubiertas que provee la referida póliza. Esa exclusión se desprende con claridad del Certificado de Póliza de Seguro Colectivo de Vida de Crédito con Beneficio Adicional por Incapacidad Física Total y Permanente que cuenta con la firma del apelante. El apelante tuvo acceso a esa información. De una lectura de dicho certificado se advenía en conocimiento de la existencia de la exclusión que aplica en el caso de marras.
En el caso de marras, el supuesto error en el consentimiento basado en la falta de información o en el desconocimiento de la póliza y su exclusión no es uno excusable. Si existió desconocimiento de dicha exclusión es por razón de la falta de diligencia del apelante al no leer el Certificado de Póliza de Seguro Colectivo de Vida de Crédito con Beneficio Adicional por Incapacidad Física Total y Permanente. Es su responsabilidad leer dicho documento del cual se desprende claramente que la póliza no cubre la incapacidad física total y permanente que surja de cualquier condición o desorden mental. Se trata de una cláusula clara y libre de ambigüedades que aunque favorece al asegurador es obligatoria para el asegurado. La teoría del alegado error por desconocimiento y falta de explicación no procede.
De los documentos que acompañan la solicitud de sentencia sumaria presentada por COSVI, respecto la demanda enmendada, surge que el apelante tuvo acceso a la información sobre las exclusiones de la póliza. No se está ante un supuesto error en el consentimiento por falta de información cuando dicho error se hubiese evitado de haberse leído el contrato. Es decir, ese supuesto error en el consentimiento se hubiese podido evitar con una regular diligencia. Esa negligencia no es imputable a las partes apeladas. La teoría de error en el consentimiento no presenta una controversia real que impide se dicte sentencia sumaria. Así las cosas, entendemos no erró el Tribunal de Primera Instancia al dictar sentencia sumaria.
*700 IV
Por los fundamentos expuestos, se CONFIRMA la sentencia apelada.
Notifíquese.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Lie. María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones
ESCOLIO 2009 DTA 13

l. Nótese que el apelante no ha señalado que esa no sea su firma. Además, de las determinaciones de hechos de la sentencia ipelada surge que el apelante suscribió y firmó el “Acuse de Recibo” que contiene el certificado. Véase, Anejo XXX, pág. L31, apelante.