Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Cooperativa de Seguros Múltiples De Puerto Rico<br><br>    Recurrida<br><br>            v.<br><br>Jorge S. Carlo Marrero, et als<br><br>        Peticionarios | Certiorari<br><br>2011 TSPR 99<br><br>182 DPR _____ |

Número del Caso:  CC        - 2008 - 842

Fecha: 30 de junio de 2011

Tribunal de Apelaciones:

                    Región Judicial de Bayamón Panel VII

Juez Ponente:        Hon. Carlos Vizcarrondo Irizarry

Abogados de la Parte Peticionaria:

                    Lcdo. José A. Andreu Fuentes
                    Lcdo. Pedro J. López Bergollo

Abogada de la Parte Recurrida:

                    Lcda. Wanda I. Medina de Soler

Materia: Subrogación

Este documento constituye un documento oficial del Tribunal Supremo que está        sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Cooperativa de Seguros Múltiples de Puerto Rico<br>Recurrida<br><br>v.<br><br>Jorge S. Carlo Marrero, *et als*<br>Peticionarios | CC-2008-842 | *Certiorari* |

Opinión del Tribunal emitida por la Jueza Asociada señora FIOL MATTA

En San Juan, Puerto Rico, a 30 de junio 2011.

Nos confrontamos con la interrogante sobre el punto de partida del término prescriptivo aplicable a la reclamación de una aseguradora por razón de la subrogación que opera al pagarle a su asegurado por los daños extracontractuales causados por un tercero. En particular, debemos resolver si al producirse la subrogación de la aseguradora continúa transcurriendo el término prescriptivo que tenía el asegurado como acreedor original o nace un nuevo término que debe computarse desde que ocurre el pago. Por entender que al pagar los daños causados por el tercero la aseguradora se inserta en la misma posición que su asegurado, resolvemos que el término prescriptivo para ejercer la causa de acción en

contra de ese tercero es el mismo que correspondería a la acción en daños que pudiera haber instado el asegurado y comienza a transcurrir desde que éste hubiera podido presentar su reclamación.

I.

El 5 de noviembre de 2004, se produjo un accidente de tránsito entre el señor Jorge S. Carlo Marrero y el señor Ángel L. Báez Rivera. El vehículo del señor Báez Rivera fue pérdida total. El 29 de diciembre de 2004, la Cooperativa de Seguros Múltiples ("Cooperativa") le pagó al señor Báez Rivera la cantidad de $10,663, según disponía la póliza de seguro que éste tenía con ella.[1] El 23 de junio de 2006, la Cooperativa presentó una Demanda de Subrogación contra el señor Carlo Marrero alegando que éste era el responsable del accidente del 5 de  noviembre de 2004 y, por tanto, le respondía por los daños causados al señor Báez Rivera y los pagos que la Cooperativa realizó por ese concepto.[2]

El señor Carlo Marrero solicitó la desestimación de la demanda alegando que la causa de acción estaba prescrita, toda vez que el término de un año aplicable a las causas de acción basadas en culpa o negligencia extracontractual comenzó a transcurrir inmediatamente después del accidente. Por su parte, la Cooperativa alegó que el término

---

[1] El costo del vehículo se calculó en $11,962. A esta cantidad se le restan $1,299 por concepto de la venta de salvamento que hizo la aseguradora, para un total de $10,663.

[2] La Cooperativa reclamó la cantidad de $11,563: $10,663 del gasto neto producto del pago hecho al señor Báez Rivera más $900 en alegados gastos de transporte.

prescriptivo comenzó a transcurrir cuando ésta hizo el pago al señor Báez Rivera. Tomando como base la teoría cognoscitiva del daño, que establece que los términos no se comenzarán a computar hasta que el acreedor de la causa de acción pueda ejercitarla, la Cooperativa planteó que no se le podía imputar el término prescriptivo del acreedor original pues no es hasta que se efectúa el pago que se produce la subrogación en virtud de la cual la Cooperativa puede ejercer la causa de acción contra un tercero.

Además, la Cooperativa alegó que las cartas que envió al señor Carlo Marrero los días 4 de octubre, 31 de octubre y 28 de noviembre de 2005 constituyeron reclamaciones extrajudiciales que tuvieron el efecto de interrumpir el término prescriptivo. Por su parte, el señor Carlo Marrero sostuvo que nunca recibió las cartas alegadamente enviadas el 4 y 31 de octubre, toda vez que fueron enviadas a una dirección que no era su dirección postal.[3]

El Tribunal de Primera Instancia declaró sin lugar la moción de desestimación presentada por el señor Carlo Marrero y éste recurrió al Tribunal de Apelaciones. Ese foro se negó a expedir el recurso al entender que el término prescriptivo en una demanda de subrogación comienza a transcurrir desde la fecha en que la compañía aseguradora

---

[3] No hay controversia sobre el contenido de las cartas en cuanto éstas indudablemente constituyen una reclamación extrajudicial. Ahora bien, como puede notarse de las fechas de las cartas impugnadas y los dos posibles puntos de partida del término prescriptivo, la controversia de si las cartas del 4 y 31 de octubre fueron enviadas y recibidas incide directamente sobre el desenlace del caso.

emite el pago a favor de su asegurado y no desde la fecha en que ocurre el accidente.

Inconforme con esta determinación del Tribunal de Apelaciones, el demandado presentó ante este Tribunal una petición de *certiorari*. En síntesis, alega que se cometieron dos errores, en cuanto al punto de partida del término prescriptivo y en cuanto a las reclamaciones extrajudiciales alegadas por la Cooperativa. Aduce el peticionario que en una demanda de subrogación el término prescriptivo comienza, no desde que la aseguradora emite el pago a su asegurado, sino desde que el asegurado, como acreedor original de la causa de acción subrogada, podía ejercitar su acción. En segundo lugar, alega que erró el foro intermedio al tomar como un hecho cierto el que se habían enviado y recibido las cartas del 4 y 31 de octubre de 2005, ya que sobre este asunto se trabó una controversia de hechos que ameritaba, cuando menos, que se celebrara una vista evidenciaria. El 6 de marzo de 2009 expedimos el *certiorari*. Ambas partes han comparecido. Resolvemos.

II.

A.

Mediante un contrato de seguro "una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo".[4] En estos contratos se transfiere el

---

[4] 26 L.P.R.A. § 102. Véase Coop. Seguros Múltiples de P.R. v. Lugo, 136 D.P.R. 203, 209 (1994).

riesgo a la aseguradora y surge una obligación por parte de ésta de responder por los daños económicos al asegurado de ocurrir dicho suceso.[5] Hemos resuelto que, al resarcir económicamente al asegurado, "la compañía aseguradora se pone en la misma posición de éste con relación a todas las acciones y remedios a los cuales tiene derecho. Ocurre lo que llamamos el derecho a la subrogación".[6] Es decir, la subrogación es la figura jurídica en virtud de la cual una compañía de seguros sustituye a su asegurado en el ejercicio de las acciones o los derechos que éste tiene contra los causantes de un daño.[7] También hemos resuelto que "el objeto de este mecanismo de sustitución legal es que la compañía aseguradora, en virtud del contrato de seguro, pueda recuperar de esos terceros causantes de un accidente, la cantidad que en concepto de indemnización la aseguradora pagó a la parte asegurada para cubrir los daños ocasionados por los terceros".[8] Mediante esta figura jurídica, la aseguradora "se coloca en la misma posición del asegurado para invocar aquellos derechos que le fueron cedidos".[9] Es decir, cuando la aseguradora ejerce el derecho de subrogación no representa al asegurado, sino que le

---

[5] Aseg. Lloyd's London v. Cía. Des. Comercial, 126 D.P.R. 251, 267 (1990).

[6] Id (Énfasis suplido).

[7] Gen. Accident Ins. Co. P.R. v. Ramos, 148 D.P.R. 523, 532 (1999). Véase además Coop. Seguros Múltiples de P.R. v. Lugo, supra, p. 211.

[8] Gen. Accident Ins. Co. P.R. v. Ramos, supra, p. 532.

[9] Id, p. 533 (Énfasis suplido). Como veremos más adelante, esta figura se asemeja a la de cesión de créditos.

sustituye, mas sólo para recobrar de terceros lo pagado por ella, según los términos de la póliza. El alcance de esta sustitución está claramente delimitado y se circunscribe a reclamar "los derechos y remedios que tenía el asegurado frente al causante de los daños, relativos al pago que la compañía aseguradora le hizo al asegurado".[10] Por tanto, hemos resuelto que esta subrogación "[n]o confiere mayores derechos al que se subroga que los que tenía el asegurado".[11] Esto, "pues nadie puede adquirir –vía la subrogación– derechos que no tenía aquél cuyos derechos invoca el asegurador".[12]

La subrogación se puede catalogar como un tipo de novación modificativa.[13] Esto, pues las obligaciones pueden modificarse: (1) variando su objeto o sus condiciones principales, (2) sustituyendo la persona del deudor, o (3) subrogando a un tercero en los derechos del acreedor.[14] En el tercer supuesto, se trata de una novación modificativa subjetiva de la parte activa de la obligación que no produce la extinción de la relación obligatoria original,

---

[10]  *Id* (Énfasis suplido). Véase además Coop. Seguros Múltiples de P.R. v. Lugo, *supra*, p. 211; Aseg. Lloyd's v. Cía. Des. Comercial, *supra*, p. 269.

[11]  Coop. Seguros Múltiples de P.R. v. Lugo, *supra*, p. 311 (Énfasis suplido).

[12]  *Id*.

[13]  José Puig Brutau, Fundamentos de Derecho Civil, Tomo 1, Vol. I (1985), p. 404.

[14]  Artículo 1157 del Código Civil, 31 L.P.R.A. § 3241.

sino que sustituye un acreedor por otro.[15] De igual manera, la subrogación de un tercero en los derechos del acreedor no puede presumirse fuera de los casos expresamente mencionados en el Código Civil.[16] El artículo 1164 del Código Civil establece que se presumirá que hay subrogación: (1) cuando un acreedor pague a otro acreedor preferente, (2) cuando un tercero, no interesado en la obligación, pague con aprobación expresa o tácita del deudor, o (3) cuando pague el que tenga interés en el cumplimiento de la obligación, salvo los efectos de la confusión en cuanto a la porción que le corresponda.[17] Además de esta modalidad legal de la subrogación, también existe la subrogación convencional en la que el acreedor y el tercero acuerdan la transmisión de la titularidad del crédito.[18] Esta es la modalidad aplicable a los pagos realizados por las aseguradoras al amparo de la póliza de seguro con sus respectivos asegurados.[19] La subrogación transfiere al subrogado "el crédito con los derechos a él

---

[15] Ángel Cristóbal Montes, El pago o cumplimiento de las obligaciones, Ed. Tecnos (1986), p. 55; José Manuel Lete del Río y Javier Lete Achirica, Derechos de Obligaciones, Vol. I, Ed. Aranzadi (2007), p. 182.

[16] Artículo 1163 del Código Civil, 31 L.P.R.A. § 3247.

[17] 31 L.P.R.A. § 3248.

[18] Nieves Bayo Recuero, El pago del tercero: subrogación, Ed. DIJUSA (2000), p. 253.
[19] Véase Gen. Accident Ins. Co. P.R. v. Ramos, supra, p. 532; Coop. Seguros Múltiples de P.R. v. Lugo, supra, pp. 210-211.

anexos, ya contra el deudor, ya contra los terceros, sean fiadores o poseedores de las hipotecas".[20]

Nuestra jurisprudencia está acorde con la doctrina civilista, en cuanto establece que el efecto principal de la subrogación es que el nuevo acreedor se coloca en la "misma situación jurídica que se encontraba el acreedor respecto al deudor".[21] A diferencia de una novación extintiva, en donde la obligación original se extingue y nace un nuevo vínculo obligacional entre las partes, en la novación modificativa la obligación original subsiste. Como nos explica Hernández-Gil: "[El] [p]resupuesto de la subrogación es el mantenimiento de la relación obligacional inicial".[22]

Una modalidad de la novación modificativa es la novación subjetiva en la que se produce la sustitución de

---

[20] Artículo 1166 del Código Civil, 31 L.P.R.A. § 3250.

[21] Federico Puig Peña, Tratado de Derecho Civil, Tomo 4, Vol. I (1974), p. 229 (Énfasis suplido). Véase además, José Puig Brutau, Op.Cit., p. 253 ("[E]l pagador adquiere el derecho de crédito del acreedor".); Alfonso Hernández Moreno, El Pago del Tercero, Ed. Bosch (1983), p. 74 ("[E]s la misma obligación".) y n. 344; Ángel Cristóbal Montes, Op.Cit., p. 55 ("[El nuevo acreedor] se subroga en la posición jurídica del acreedor satisfecho, adquiriendo su derecho de crédito en el estado actual con todas sus garantías y accesorios".); Bayo Recuero, Op.Cit., p. 327 ("[N]o se crea ningún tipo de vínculo nuevo de obligaciones no existentes hasta entonces".).

[22] Antonio Hernández-Gil, Derecho de obligaciones, Madrid (1960), p. 292 (Énfasis suplido). Este tratadista distingue los efectos de la subrogación y la continuidad de la relación obligacional inicial insistiendo de que no es "un mero derecho de crédito", sino la supervivencia de la obligación original en su totalidad. Id., p. 294. También lo distingue de la acción del reembolso, en donde opera una obligación nueva y distinta a la anterior.

una de las partes.[23] Si se sustituye al deudor, se trata de una novación modificativa subjetiva de la parte pasiva. Si se sustituye al acreedor, estamos ante una novación modificativa subjetiva de la parte activa. En este último caso, se produce la transmisión de la titularidad del crédito del acreedor original a un tercero que le sustituye. Si bien en una época el traspaso de la obligación no era posible sino por vía de la novación extintiva, "el concepto moderno de la obligación no es obstáculo a su transmisibilidad".[24] Por tanto, en la subrogación, como novación modificativa subjetiva,[25] "no se produce, como en los demás casos de la novación, la extinción de las obligaciones accesorias[,] [sino que] la subrogación transfiere al subrogado los créditos con los derechos a él anexos".[26] Incluso, hay tratadistas que proponen que, más que una novación subjetiva activa, el pago con subrogación es una "transmisión activa de la obligación".[27] Otros plantean que es mejor hablar de los

---

[23] Calixto Valverde y Valverde, Tratado de Derecho Civil Español, Tomo III (1937), p. 196.

[24] Id., pp.156-157.

[25] Puig Brutau, Op.Cit., p. 404.

[26] Valverde y Valverde, Op.Cit., p. 202.

[27] Francisco De A. Sancho Rebullida, La novación de las obligaciones, Ed. Nauta (1964), p. 161. Por su parte, Montes propone que más que una novación, se trata de "la sucesión inter vivos en el crédito establecido" en donde el crédito "no se extingue [sino que] pasa tan sólo al nuevo titular [pues] esta figura presupone el mantenimiento de la relación obligatoria inicial". Ángel Cristóbal Montes, Op.Cit., p. 56.

efectos del pago por tercero que de una novación modificativa subjetiva.[28] En todo caso, el resultado es el mismo, es decir, la continuación íntegra de la obligación anterior en la que el vínculo original "subsiste idéntico en manos del nuevo acreedor".[29]

La doctrina civilista ha recurrido a la figura de la cesión de créditos, a modo de analogía, para explicar los efectos de la subrogación.[30] En cuanto a esta figura, el Tribunal Supremo de España ha expresado que, tras la cesión del crédito, el nuevo acreedor "se ha colocado en la misma situación que se hallaba el cedente cuando le transfirió dicho crédito".[31] En su Sentencia del 13 de febrero de 1988, el Tribunal Supremo español resolvió que, más allá del cambio en la persona del acreedor, "en lo demás la obligación queda inalterable o invariable en su total contenido y características […  y] el deudor no responde hacia el cesionario de una obligación distinta, sino de la misma obligación en su total integridad e identidad, en

---

[28] Buyo Recuero, *Op.Cit.*, p. 327.

[29] Sancho Rebullida, *Op.Cit*, p. 162 (Énfasis suplido).

[30] *Véase* Puig Brutau, *Op.Cit.*, p. 386; Puig Peña, *Op.Cit.*, p. 167.

[31] Sentencia del Tribunal Supremo de España de 25 de abril de 1932, Repertorio de Jurisprudencia 1026, Aranzadi, p. 445 (Énfasis suplido). En su Sentencia del 19 de diciembre de 1932, dicho foro resolvió que las obligaciones anteriores "no se alteran ni modifican por el acto jurídico de la cesión". Repertorio de Jurisprudencia 1365, Aranzadi, p. 569.

cuyo sentido ya cuida nuestro Código de hablar de novación modificativa".[32]

B.

Como hemos visto, uno de los efectos de la subrogación es que el nuevo acreedor adquiere todos los derechos y créditos del acreedor original, incluidas las garantías y demás elementos accesorios. Además, adquiere las mismas limitaciones pues, como hemos visto, nadie puede, por vía de la subrogación, adquirir derechos contra el deudor que el acreedor original no tenía. De igual manera, el deudor conserva contra el nuevo acreedor las mismas excepciones que tenía contra el anterior.[33] A esta conclusión llegó el Tribunal Supremo de España en su Sentencia del 23 de junio de 1969: "[D]e igual modo que el crédito del tercero, por ser el mismo que el originario, pasan las garantías de éste, se le pueden oponer las mismas excepciones".[34] No obstante lo anterior, la doctrina civilista ha sido considerablemente parca al atender la interrogante del efecto de las defensas que el deudor tenía contra su acreedor original cuando entra en escena un nuevo acreedor

---

[32] Repertorio de Jurisprudencia 1985, Aranzadi, p. 1956. Véase además Sentencia del 17 de septiembre de 1953, Repertorio de Jurisprudencia 2509, pp. 1619-1621.

[33] Buyo Recuero, *Op.Cit.*, p. 264. Véase además Ángel Cristóbal Montes, *Op.Cit.*, p. 59.

[34] Repertorio de Jurisprudencia 3576, Aranzadi, p. 2426. Véase además Sentencia del 3 de marzo de 1988, Repertorio de Jurisprudencia 1546, Aranzadi, pp. 1487-1488; Sentencia del 12 de mayo de 1932, Repertorio de Jurisprudencia 1050, Aranzadi, p. 455.

por vía de la subrogación, particularmente en cuanto a la prescripción. Como nos explica Cañizares Laso:

> Aspecto fundamental y sobre el que la doctrina no suele ocuparse con detenimiento es el de las excepciones oponibles por el deudor al nuevo acreedor que ocupa el lugar del antiguo […] La doctrina generaliza en esta materia y a veces se llega a clasificaciones que en el mejor de los casos contribuyen a oscurecer la materia objeto de estudio.[35]

Según la tratadista, quien establece, al igual que otros tratadistas, la similitud entre la subrogación y la cesión de crédito, estas excepciones oponibles por el deudor al nuevo acreedor pueden ser por razón de la cosa, es decir, que sean inherentes a la causa de acción, o de la persona, es decir, inherentes a las partes.[36] En particular, ésta sostiene que la defensa de la prescripción <u>es una excepción por razón de la cosa</u>.[37] Es decir, es inherente a la causa de acción y no a unas partes específicas. Nuevamente haciendo una comparación con la figura de la cesión de créditos, la tratadista afirma que "[u]no de los supuestos que podía producirse es el de la posible excepción de la prescripción. Se incluirían en este supuesto dos cuestiones: caso de deuda prescrita y caso de deuda en plazo de prescripción".[38]

A semejante conclusión llega Valverde y Valverde. Según éste, la afirmación de que un deudor puede oponerle

---

[35] Ana Cañizares Laso, <u>El pago con subrogación</u>, Ed. Civitas, S.A (1996), p. 139.

[36] *Id.*, p. 140.

[37] *Id.*, pp. 140-141.

[38] *Id.*, pp. 141-142.

al nuevo acreedor las mismas excepciones que podía utilizar contra el acreedor original es consistente con la similitud entre la subrogación y la cesión de créditos, ya que en el segundo caso, el deudor "puede poner al cesionario las mismas excepciones inherentes a la cosa que hubiera podido utilizar contra el acreedor primitivo".[39] Esto, pues el deudor "no responde de otra obligación distinta, sino de la misma que tenía con el cedente, y, por consiguiente, conserva al cesionario la posición jurídica que tenía".[40] Igual opina Puig Peña en el caso de la cesión de créditos:

> El deudor de la obligación puede oponer al nuevo acreedor las excepciones que podía oponer al acreedor ordinario. Esto es consecuencia del principio de que la situación del deudor no puede empeorarse por virtud de la cesión.[41]

Como nos explica Puig Brutau, esto también es consistente con el hecho de que la subrogación no es una novación extintiva creadora de una nueva obligación pues "sería inconveniente esta novación extintiva con cambio de acreedor para el deudor, que no podría oponer al nuevo acreedor las excepciones personales de que disponía a su acreedor primitivo".[42]

En su Sentencia del 13 de mayo de 1930, el Tribunal Supremo de España explica la relación entre la causa de acción del acreedor original y la del nuevo acreedor,

---

[39] Valverde y Valverde, *Op.Cit*, p. 159.

[40] *Id.*

[41] Puig Peña, *Op.Cit.*, pp. 168-169 (Énfasis suplido).

[42] Puig Brutau, *Op.Cit.*, p. 405. Véase además Puig Peña, *Op.Cit.*, n. 1.

particularmente las limitaciones comunes a ambas, cuando

una aseguradora se subroga en la posición de su asegurado

frente al tercero causante del daño:

> Considerando [q]ue es la subrogación la acción de sustituir, o poner una cosa o persona en lugar de otra [… un] asegurador […] después de haber pagado la indemnización al asegurado, es evidente que para perseguir aquél la responsabilidad que pretenda exigir a quienes sean los autores o responsables del [daño] habrá de <u>ajustar</u> el ejercicio de sus derechos y subordinar en todo la titularidad de su acción <u>a lo que expresamente debiera haber cumplido el asegurado</u>.[43]

Como hemos visto, tanto la doctrina científica como la

jurisprudencia española concluyen que entre los elementos

inherentes a la subrogación se encuentran: (1) que se trata

de la misma obligación que vinculaba al antiguo acreedor y

al deudor que permanece en la relación, y no del nacimiento

de una nueva obligación; y (2) que el deudor, precisamente

porque quedó inalterada la relación obligacional original,

podrá oponer al nuevo acreedor las mismas excepciones y

defensas que tenía frente al acreedor inicial. Por tanto,

es forzoso concluir que cuando un tercero se subroga en la

posición del acreedor anterior, adquiere la causa de acción

en las mismas condiciones y con las mismas limitaciones que

éste. Esto incluye, indudablemente, el periodo ya

transcurrido del término prescriptivo aplicable a dicha

causa de acción. Lo contrario permitiría el absurdo de que

un tercero que se subroga en la posición del acreedor de

una causa de acción prescrita pueda resucitar la misma y el

---

[43] Repertorio de Jurisprudencia 939, Aranzadi, p. 357 (Énfasis suplido).

deudor ahora responda por una obligación que ya no era exigible.

Pero hay más. Por tratarse de una subrogación en el contexto de una póliza de seguro, materia traída a nuestro ordenamiento de la doctrina estadounidense, recurrimos a ésta por su valor persuasivo, en particular, sobre la prescripción en una situación de subrogación como la que nos ocupa. Esto pues, en materia de seguros, "la praxis de este Tribunal ha consistido en utilizar las normas más avanzadas del derecho anglosajón y del derecho civil".[44]

La doctrina estadounidense contesta la interrogante que nos ocupa de la misma forma que la doctrina civilista. Incluso, la contesta con mayor precisión. Como nos explica la tratadista Jane Massey Draper:

> [I]nsurers have frequently attempted to have applied to the subrogation actions the same time accrual as that applied to the indemnity actions, but courts generally have adhered to the view that the statute of limitations begins to run on a subrogated insurer's action against a third-party tortfeasor <u>at the same time that the statute of limitations would begin to run on an action by the insured</u>, or his personal representative in the event of the death of the insured, against the third-party tortfeasor.[45]

---

[44] <u>Mun. of San Juan v. Great Ame. Ins. Co.</u>, 117 D.P.R. 632 (1986).

[45] Jane Massey Draper, Annotation, "When Does a Statute of Limitations Begin to Run Upon an Action by Subrogated Insurer Against Third-Party Tortfeasor", 91 A.L.R. 3d 844, 847 (Énfasis suplido). La autora ofrece una lista de jurisdicciones donde los tribunales han llegado a semejante conclusión. Entre éstas se encuentran: Alabama, Arkansas, California, el Distrito de Columbia, Idaho, Indiana, Luisiana, Nueva Jersey, Ohio, Pennsylvania, Tennessee y Texas, además de la jurisdicción federal. *Id.*, p. 850.

La justificación ofrecida para esta conclusión es semejante a la de la doctrina civilista:

> A rationale offered in support of this view has been that a subrogated insurer <u>stands in the shoes of its insured, taking no rights other than those that the insured had</u>, and at the same time being subject to <u>all defenses which the third-party tortfeasor might assert against the insured</u>.[46]

### C.

A diferencia de lo argumentado por la parte demandante, lo anterior es consistente con la teoría cognoscitiva del daño, vigente en nuestro ordenamiento. Ésta establece que los términos para incoar una causa de acción comienzan a transcurrir cuando el reclamante conoce, o debió conocer, si hubiera empleado un grado razonable de diligencia, que sufrió daños y quién se los causó.[47] En <u>Padín v. Cía Fom. Ind.</u>,[48] manifestamos que "[h]emos resuelto reiteradamente que el verdadero punto de partida para computar el término prescriptivo para instar una acción de daños y perjuicios es la fecha en la que el agraviado supo del daño y pudo ejercitar su acción. Por lo tanto, el término para ejercer las acciones comienza a transcurrir, no cuando se sufre el daño, sino cuando se conocen todos los elementos necesarios para poder ejercer la acción".[49] Como consecuencia, "hemos precisado que el momento que se toma como verdadero punto

---

[46] *Id.* (Énfasis suplido).

[47] <u>Toledo Maldonado v. Cartagena Ortiz</u>, 132 D.P.R. 249 (1992).

[48] 150 D.P.R. 403 (2000).

[49] *Id.*, p. 411.

de partida en una acción de daños es la fecha en que el perjudicado conoció del daño, quién fue el autor, y, además, desde que éste conoce los elementos necesarios para poder ejercitar efectivamente su causa de acción".[50]

La parte demandante expone que no podía entablar una acción contra el alegado responsable de los daños producidos a su asegurado antes de subrogarse en su posición. Alega entonces que como la teoría cognoscitiva se basa en que los términos prescriptivos comienzan a correr desde el momento en que el titular de la causa de acción puede ejercitarla, el término prescriptivo de la causa adquirida por subrogación debe calcularse desde el momento en que se emitió el pago. Dicha posición obvia el hecho fundamental de que la parte demandante no está ejerciendo una causa de acción nueva producto del pago emitido a favor de su asegurado. Todo lo contrario, la premisa principal de la subrogación supone, como hemos visto, que el nuevo acreedor sustituye al anterior en su posición, mientras la obligación original permanece intacta. Es decir, la aseguradora está ejerciendo la causa de acción que tenía su asegurado. Por tanto, lo que hay que analizar es desde cuando el asegurado podía entablar la causa de acción. Esto, pues "la prescripción es materia sustantiva y no

---

[50] Vera v. Dr. Bravo, 161 D.P.R. 308, 328 (2004). Véase además Santiago v. Ríos Alonso, 156 D.P.R. 181, 189 (2002); Martínez v. Bristol Myers, Inc., 147 D.P.R. 383, 405 (1999).

procedimental, regida por los principios que informan el Derecho civil".[51]

La causa de acción del señor Báez Rivera contra el señor Carlo Marrero surgió al amparo del artículo 1802 del Código Civil.[52] Ésta, según el artículo 1868 del Código, prescribe por el transcurso de un año "desde que lo supo el agraviado",[53] lo cual, según hemos precisado, significa desde que el agraviado conoció los elementos necesarios para instar efectivamente su causa de acción. Finalmente, el artículo 1869 del Código Civil dispone que "[e]l tiempo para la prescripción de toda clase de acciones, cuando no haya disposición especial que otra cosa determine, se contará desde el día en que pudieron ejercitarse".[54] En este caso, el señor Báez Rivera, acreedor original de la causa de acción, pudo ejercitar la misma desde el mismo día que ocurrió el accidente, puesto que en ese momento conoció del daño causado a su auto y el autor del daño.[55] Por tanto, el

---

[51] Olmo v. Young & Rubicam of P.R., Inc., 110 D.P.R. 740, 742-743 (1981). Véase además Feliciano v. A.A.A., 93 D.P.R. 655, 657 (1966).

[52] "El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización." 31 L.P.R.A. § 5141.

[53] 31 L.P.R.A. § 5298 (Énfasis suplido).

[54] 31 L.P.R.A. § 5299.

[55] Véase Toledo Maldonado v. Cartagena Ortiz, 132 D.P.R. 249 (1992) en cuanto a teoría cognoscitiva del daño que establece que el término prescriptivo de una acción se computa desde que la víctima supo o debió saber del daño causado y quién lo causó.

término prescriptivo de un año comenzó a partir del 5 de noviembre de 2004. Al subrogarse en su posición, la aseguradora adquirió una causa de acción cuyo término prescriptivo ya había comenzado y continuaba corriendo.[56]

III.

Como hemos visto, el término prescriptivo de la causa de acción en este caso comenzó a correr a partir del 5 de noviembre de 2004. Por tanto, la causa prescribía el 7 de noviembre de 2005.[57]

El propósito de los términos prescriptivos es garantizar la estabilidad de las relaciones económicas y sociales al estimular el rápido reclamo del cumplimiento de las obligaciones.[58] Por eso, las acciones prescriben "por el mero lapso del tiempo fijado en la ley".[59] Como expusimos en

---

[56] Lo anterior no significa que la aseguradora queda desprovista de alternativas en caso de subrogarse en una causa de acción prescrita. En primer lugar, cabe destacar que en este caso, la aseguradora no adquirió una causa de acción a punto de prescribir; apenas habían transcurrido tres (3) meses. En segundo lugar, muchos contratos de seguro incluyen cláusulas de cooperación, diseñadas precisamente para facilitar el ejercicio de la causa de acción subrogada por parte de la aseguradora. Mediante esta cláusula, el asegurado viene obligado a notificarle inmediatamente a la aseguradora de la ocurrencia de algún evento pertinente para que ésta pueda tomar acciones afirmativas para proteger su interés. En caso de que por la negligencia del asegurado la aseguradora no pueda ejercer su causa de acción subrogada, ésta tendrá una causa de acción contra aquél. Véase Coop. Seguros Múltiples de P.R. v. Lugo, supra, pp. 212-214; Morales v. Automatic Vending Service, Inc., 103 D.P.R. 281, 284-285 (1975); Valle v. Sucn. Wiscovitch, 88 D.P.R. 86, 89 (1963).

[57] El 6 de noviembre era domingo.

[58] Cintrón v. E.L.A., 127 D.P.R. 582, 588 (1990).

[59] Artículo 1861 del Código Civil, 31 L.P.R.A. § 5291.

Cintrón v. E.L.A., "el silencio crea una objetiva y razonable confianza en [el] deudor de que el derecho no será ejercitado".[60] No obstante, los términos prescriptivos son susceptibles de interrupción. Según el artículo 1873 del Código Civil, la prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial y por cualquier acto de reconocimiento de la deuda por el deudor.[61] Particularmente, en los primeros dos casos se permite la interrupción del término prescriptivo ante la "manifestación inequívoca de quién, amenazado con la pérdida de su derecho, expresa su voluntad de no perderlo".[62] Uno de los efectos de la interrupción de la prescripción es que el plazo prescriptivo comienza a correr de nuevo, por entero, desde la fecha de la interrupción.[63]

Para interrumpir el término prescriptivo de la acción en daños mediante reclamación extrajudicial, es necesario que dentro de ese término el acreedor del derecho informe o manifieste su voluntad de reclamar por los perjuicios que le ha causado la actuación u omisión del deudor.[64] En el caso de autos, la parte demandante alega que interrumpió el término prescriptivo al enviar unas cartas los días 4 de

---

[60] Cintrón v. E.L.A., supra, p. 589.

[61] 31 L.P.R.A. § 5303. Véase Cintrón v. E.L.A., supra, pp. 589-590.

[62] Feliciano v. A.A.A., supra, p. 660.

[63] Véase Díaz de Diana v. A.J.A.S. Ins. Co., 110 D.P.R. 471, 474 (1980).

[64] Cintrón v. E.L.A., supra, p. 589.

octubre, 31 de octubre y 28 de noviembre de 2005. Como hemos visto, la carta del 28 de noviembre no tuvo efecto alguno sobre la prescripción, pues el término vencía el 7 de noviembre. Por tanto, lo crucial es determinar si las cartas del 4 y 31 de octubre interrumpieron los términos. El contenido de las cartas revela la innegable intención de la parte demandante de preservar su derecho. En ese sentido, cumplen sustantivamente con los elementos de una reclamación extrajudicial. El demandado no disputa ese hecho, pero alega que ambas cartas fueron enviadas a una dirección postal que no es la suya. Por su parte, la aseguradora indica que envió las cartas correctamente y descansa en la presunción de la Regla 304 de Evidencia que establece que "una carta dirigida y cursada por correo debidamente, fue recibida en su oportunidad".[65] Por su parte, los demandados han presentado declaraciones juradas de que no recibieron dichas cartas, reafirmando su alegación de que las direcciones a las que se enviaron no eran las correctas.

En Hawayek v. A.F.F. resolvimos que la reclamación extrajudicial hecha por medio de una carta interrumpe la prescripción de la acción "si la misma llega a su destino".[66] Para activar la presunción establecida en la Regla 304, se debe demostrar que, en efecto, se envió la

---

[65] 32 L.P.R.A. Ap. VI R. 304(23).

[66] 123 D.P.R. 526, 530 (1989).

carta.[67] Una vez establecido el hecho básico de que las cartas se enviaron, corresponde a la otra parte presentar prueba para persuadir al juzgador de la inexistencia del hecho presumido de que las cartas llegaron a su destino. Es decir, el hecho base a demostrarse por quien quiera valerse de la presunción es que envió la carta. El hecho presumido es que la carta llegó.[68] Por tanto, la otra parte puede presentar prueba para derrotar el hecho base o para derrotar el hecho presumido. En el primer supuesto, se determinará la existencia del hecho según establece la Regla 110 de Evidencia.[69] En el segundo caso, la prueba presentada para derrotar la presunción debe ser de tal calidad que persuada al juzgador de la inexistencia del hecho presumido.[70] De lo contrario, el hecho presumido sobrevive. En ambos casos, le corresponde al juzgador de los hechos, en su sana discreción, aquilatar la prueba y hacer una determinación.

En el caso de autos, la Cooperativa alega que envió dos cartas al señor Carlo Marrero el 4 y 31 de octubre de 2005. Ambas cartas constituían una reclamación extrajudicial. La Cooperativa descansa en la presunción establecida por la Regla 304 de Evidencia. Sin embargo, el señor Carlo Marrero ha presentado declaraciones juradas atacando tanto el hecho

---

[67] *Id.*, p. 531.

[68] Díaz de Diana v. A.J.A.S. Ins. Co., *supra*, p. 478.

[69] 32 L.P.R.A. Ap. VI R. 110.

[70] *Véase* Rivera Figueroa v. Fuller Brush, 2011 T.S.P.R. 25, p. 18.

base de que se enviaron las cartas a la dirección correcta como del hecho presumido de que las cartas llegaron a su destino. Le corresponde al Tribunal de Primera Instancia celebrar una vista evidenciaria para dirimir esta controversia. De determinarse que las cartas no fueron enviadas a la dirección correcta o que éstas no llegaron a su destino, procede la desestimación de la demanda por prescripción. De lo contrario, si se determina que en efecto fueron enviadas correctamente y que las mismas llegaron a su destino, el término prescriptivo se habrá interrumpido y la demanda se habrá presentado oportunamente.

Por los fundamentos anteriormente expuestos, se revoca la Resolución del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para la celebración de procedimientos ulteriores consistentes con esta Opinión.

Se dictará Sentencia de conformidad.

Liana Fiol Matta
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Cooperativa de Seguros Múltiples de Puerto Rico<br>Recurrida<br><br>v.<br><br>Jorge S. Carlo Marrero, *et als*<br>Peticionarios | CC-2008-842 | *Certiorari* |

*SENTENCIA*

En San Juan, Puerto Rico, a 30 de junio 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se revoca la Resolución del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para la celebración de procedimientos ulteriores consistentes con esta Opinión.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo