EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| ECP Incorporated<br><br>Peticionaria<br><br>v.<br><br>Oficina del Comisionado de Seguros<br><br>Recurrida | Certiorari<br><br>2020 TSPR 112<br><br>205 DPR _____ |

Número del Caso:  CC-2019-435


Fecha:  24 de septiembre de 2020


Tribunal de Apelaciones:

    Panel X


Abogada de la parte peticionaria:

    Lcda. Margarita Mercado Echegaray


Abogados de la parte recurrida:

    Lcda. Brenda Pérez Fernández
    Lcdo. Antonio Quiñones Rivera



Materia:  Derecho de Seguros, venta de productos con garantía limitada, jurisdicción investigativa de la Oficina del Comisionado de Seguros



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

ECP Incorporated

    Peticionaria

      v.

Oficina del Comisionado de Seguros

    Recurrida

CC-2019-0435     *Certiorari*

Opinión del Tribunal emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico a 24 de septiembre de 2020.

En el presente caso nos corresponde precisar el alcance de la jurisdicción investigativa de la Oficina del Comisionado de Seguros de Puerto Rico, según le fue otorgada por la Asamblea Legislativa mediante el Código de Seguros de Puerto Rico, *infra*. En particular, debemos resolver si dicha agencia administrativa tiene autoridad para requerir información de una compañía dedicada a la venta de productos con una garantía limitada, que no tiene ni ha tenido negocios de seguros y tampoco relación comercial con éstos, como lo es ECP Incorporated. Ello a raíz de cierta querella alegando irregularidades en el cobro de seguros por parte de un concesionario dedicado a la venta de vehículos de motor.

Luego de un cuidadoso examen de las disposiciones legales aplicables a la controversia de autos, así como de los hechos que dieron margen al presente litigio, adelantamos que la Oficina del Comisionado de Seguros excedió los poderes delegados por ley. Veamos.

I.

En el mes de abril de 2017, la División de Conducta de Mercado de la Oficina del Comisionado de Seguros (en adelante, "OCS") recibió una querella del señor Carlos R. Polo (en adelante, "señor Polo"). En la misma, éste alegó que adquirió un automóvil de un concesionario, donde se le financió -- sin su consentimiento -- una cantidad mayor a la acordada por concepto de los seguros que protegían su vehículo.[1]

A raíz de la referida querella, la OCS emitió una Orden de Investigación contra ECP Incorporated (en adelante, "ECP"). Dicha compañía es una que se dedica a comercializar los productos *The Protector*, un químico para la protección de superficies exteriores e interiores de automóviles.

Enterada de lo anterior, el 28 de abril de 2017 ECP presentó su contestación a la *Orden*, en la cual argumentó que no tenía injerencia en el reclamo del señor Polo sobre un alegado cargo adicional que le hizo el concesionario donde adquirió su vehículo de motor por un producto de

---

[1] Según el señor Polo, él y su esposa sólo adquirieron un protector de pintura valorado en $899.00. No obstante, se le financiaron $2,598.00 por concepto de seguros.

seguros que no se identifica con exactitud en su querella. Sostuvo, además, que la garantía limitada que ofrece como fabricante de los productos *The Protector* no se considera un seguro y, por ende, no está dentro del ámbito de la jurisdicción reguladora de la OCS. Para validar lo anterior, ECP acompañó literatura sobre la naturaleza de los productos que distribuye, incluyendo la hoja de la garantía del fabricante con los correspondientes términos y condiciones.

El 20 de junio de 2017 la OCS cursó un Requerimiento de Información a ECP. En el mismo, le solicitó a la mencionada compañía la siguiente información:

I. Mediante contestación a la Orden de Investigación emitida por la OCS, el día 20 de abril de 2017, ECP indicó lo siguiente:

"The Protector branded Paint and interior products identified in the complaint are consumer products; chemical protectants that are physically applied to exterior or interior surfaces of an automobile and specifically designed to protect the treated surfaces from named environmental damages".

De acuerdo con lo anteriormente expresado:

a) Explique en qué consiste el proceso para llevar a cabo la aplicación del químico en la superficie exterior e interior del automóvil, una vez el producto "The Protector" es adquirido por el cliente.

b) Indique si ECP tiene personal contratado en Puerto Rico para aplicar el producto químico una vez es adquirido por

> el cliente, y si la respuesta es en la afirmativa, provea una lista de quiénes son y la dirección física donde realizan dicho trabajo.
>
> c) Indique quién evalúa si el reclamo del comprador está cubierto bajo los términos del contrato y dónde se le instruye llevar el vehículo para la reparación necesaria. Apéndice del *Certiorari*, pág. 349.

En el referido requerimiento, además, se le apercibió a ECP que el dejar de cumplir con el mismo dentro del término provisto constituiría una obstrucción al poder de investigación de la OCS, la cual acarrearía sanciones administrativas.

Evaluado el referido documento, el 26 de julio de 2017 ECP presentó una moción de reconsideración ante la OCS. En ésta se reiteró en que los productos que distribuye no son considerados contratos de seguro ni cualifican como contratos de servicios bajo el Código de Seguros de Puerto Rico, *infra*. Dicha moción de reconsideración fue denegada por la referida dependencia gubernamental y, en consecuencia, se le concedió a ECP hasta el 8 de agosto de 2017 para contestar el requerimiento en cuestión.

Inconforme con la determinación de la OCS, el 8 de agosto de 2017 ECP presentó ante dicho foro administrativo un escrito titulado *Impugnación de Investigación al Amparo del Artículo 8 de la Regla I-A del Reglamento del Código*

*de Seguros*. En dicho documento, señaló que el requerimiento que le fue cursado excede el alcance de la autoridad investigativa de la OCS, pues los negocios llevados a cabo por ECP no caen dentro de aquellos regulados por dicha instrumentalidad gubernamental.

Así las cosas, y tras varios trámites procesales no necesarios aquí pormenorizar, incluyendo el descubrimiento de prueba realizado entre noviembre de 2017 y febrero de 2018, las partes solicitaron al foro adjudicativo que considerase los méritos de la controversia planteada mediante una Resolución Sumaria.

Evaluados los planteamientos de ambas partes, el 27 de agosto de 2018 la OCS emitió una *Resolución* final, mediante la cual sostuvo la validez de su investigación, ordenó a ECP a contestar el requerimiento de información en un término de treinta (30) días -- so pena de desacato -- y le apercibió de la posible imposición de multas administrativas, de no cumplir con lo requerido. Dicha Resolución fue oportunamente notificada a todas las partes en el procedimiento administrativo.

En desacuerdo con la determinación final de la OCS, ECP presentó oportunamente un recurso de revisión judicial ante el Tribunal de Apelaciones. Sobre dicha solicitud la OCS no se expresó.

Examinados los planteamientos de ECP, el 19 de diciembre de 2018 el foro apelativo intermedio emitió una

*Sentencia* en la que validó el requerimiento de información cursado a ECP, por considerarlo razonable y conforme a los deberes ministeriales de la OCS. Insatisfecha, ECP le solicitó al Tribunal de Apelaciones la reconsideración de su dictamen, pero dicha solicitud fue denegada.

Inconforme aún, ECP acudió ante este Tribunal mediante el recurso de *certiorari* que nos ocupa.[2] Según ECP, el Tribunal de Apelaciones erró al confirmar la interpretación de la OCS sobre su autoridad y jurisdicción para investigar a un fabricante de productos que ofrece una garantía limitada como manufacturero luego de concluir que, por mandato del Código de Seguros de Puerto Rico, *infra*, está sujeto a la facultad reguladora de dicha entidad. Oportunamente, la OCS presentó su alegato en oposición.

Con el beneficio de la comparecencia de ambas partes, y habiendo expedido el recurso ante nos, procedemos a resolver la controversia traída ante nuestra consideración.

## II.

Como es sabido, la Oficina del Comisionado de Seguros (OCS) es la entidad encargada de reglamentar todos los asuntos relacionados al negocio de los seguros en Puerto Rico. Ello, según las facultades que le fueron delegadas por la Asamblea Legislativa a través de la Ley Núm. 77 de

---

[2] Este recurso fue expedido en reconsideración el 25 de octubre de 2019.

19 de julio de 1957, según enmendada, 26 LPRA secs. 101 *et seq.*, mejor conocida como el Código de Seguros de Puerto Rico (en adelante, "Código de Seguros").

Como parte de los poderes delegados para ejercer sus funciones, el Comisionado de Seguros de Puerto Rico (en adelante, "Comisionado de Seguros") tiene la facultad de "llevar a cabo las investigaciones y exámenes que considere necesarias para asegurar el cumplimiento de las disposiciones del Código, su reglamento y las órdenes que ha emitido, y para obtener toda la información útil a la administración de éstas. Para ello utilizará aquellos mecanismos que estime necesarios". Art. 2.030 del Código de Seguros, 26 LPRA sec. 235. Estas investigaciones pueden incluir a cualquier persona o entidad que tenga o haya tenido negocios de seguros y a entidades comerciales o empresas que tengan relación comercial con las mismas. *Íd.* Además, pueden extenderse fuera de la jurisdicción de Puerto Rico. *Íd.*

De igual forma, el Art. 4 de la Regla I-A Procedimientos de Investigación, Reglamento Núm. 5266 de la OCS, dispone en cuanto al alcance de las investigaciones realizadas por dicha Oficina:

> El Comisionado podrá llevar a cabo las investigaciones e inspecciones convenientes para asegurar el cumplimiento de las distintas disposiciones del Código de Seguros de Puerto Rico y su Reglamento, de las Órdenes y Resoluciones que ha emitido aquél y sobre cualquier otro asunto que guarde relación con la materia de seguros. Llevará a cabo, además,

> las investigaciones necesarias para obtener toda la información útil a la administración de las disposiciones legales y reglamentarias que le corresponde poner en vigor, y toda aquella información pertinente al asunto objeto de la investigación. Dicha investigación podrá extenderse a entidades que tengan o hayan tenido relación con seguros.

Así pues, tanto del Código de Seguros como de la Regla I-A, puede colegirse fácilmente que **la autoridad para investigar concedida a la OCS, si bien es amplia, se limita a la reglamentación de la industria de seguros y a la administración y cumplimiento del Código de Seguros, así como los reglamentos promulgados por dicha entidad administrativa**. En el contexto de esta controversia, esa autoridad está enmarcada en el supuesto de que el sujeto bajo investigación tenga o haya tenido negocios de seguros o que sea una entidad comercial o empresa que tenga relación comercial con los mismos.

Sobre este particular, es preciso recordar que en el campo del derecho administrativo "[la] ley habilitadora es el mecanismo legal mediante el cual se autoriza y se delega a la agencia administrativa los poderes necesarios para que actúe conforme al propósito perseguido por el legislador al crearla". *ASG v. Mun. San Juan*, 168 DPR 337, 343 (2006); *Romero Barceló v. E.L.A.*, 169 D.P.R. 460 (2006); *Caribe Comms., Inc. v. P.R.T.Co.*, 157 DPR 203 (2002). En otras palabras, la autoridad que se le confiere a una agencia administrativa está sujeta a aquellos

poderes y facultades que específicamente la Asamblea Legislativa le haya delegado a través de su ley habilitadora. *Comisionado de Seguros de Puerto Rico v. Corporación para la Defensa del Poseedor de Licencia de Armas de Puerto Rico, Inc.*, 202 DPR 842 (2019); *Ayala Hernández v. Consejo Titulares*, 190 DPR 547, 559 (2014); *DACo v. AFSCME*, 185 DPR 1, 12 (2012).

Conforme a este principio, "una agencia solo puede llevar a cabo las funciones que se le han encomendado legislativamente, aquellas que surgen de su actividad o encomienda principal y ejercer los poderes que sean indispensables para llevar a cabo sus deberes y responsabilidades". *Comisionado de Seguros de Puerto Rico v. Corporación para la Defensa del Poseedor de Licencia de Armas de Puerto Rico, Inc.*, *supra*, pág. 852; *Ayala Hernández v. Consejo Titulares*, *supra*. Por lo tanto, las entidades administrativas no pueden actuar más allá de los poderes que le fueron concedidos por medio de su ley habilitadora, pues toda actuación administrativa que se exceda de dichos poderes es considerada *ultra vires* y, consecuentemente, nula. *Comisionado de Seguros de Puerto Rico v. Corporación para la Defensa del Poseedor de Licencia de Armas de Puerto Rico, Inc.*, *supra*; *Ayala Hernández v. Consejo Titulares*, *supra*.

En el contexto particular de una investigación, este Tribunal ha expresado que ésta puede considerarse válida

si se encuentra dentro de los poderes de la agencia que la realiza, si sus términos no son demasiado vagos e imprecisos y si la información requerida es pertinente a las funciones o deberes de dicha entidad. *Comisionado de Seguros v. Bradley*, 98 DPR 21 (1969). En ese sentido, también "hemos precisado que son los tribunales, como intérpretes últimos de la compatibilidad del ejercicio del poder investigativo gubernamental con los postulados constitucionales, los llamados a dirimir las controversias sobre asuntos de pertinencia". *E.L.A. v. Saint James*, 171 DPR 911, 925 (2007).

### III.

De otra parte, y en lo pertinente a alcance del poder investigativo y regulador de la OCS, el Código de Seguros define *seguro* como "el contrato mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo". Art. 1.020 del Código de Seguros, 26 LPRA sec. 102. En este tipo de acuerdo el asegurador asume determinados riesgos a cambio del cobro de una prima o cuota periódica, en virtud de la cual se obliga a responder por la carga económica que recaiga sobre el asegurado, en el caso de que ocurra algún evento especificado en el contrato. *S.L.G. Francis-Acevedo v. SIMED*, 176 DPR 372 (2009); *Coop. Ahorro y Créd. Oriental v. S.L.G.*, 158 DPR 714, 721 (2003); *Aseg. Lloyd's*

*London v. Cía. Des. Comercial*, 126 DPR 251 (1990). Es decir, "el propósito de todo contrato de seguros es la indemnización y protección en caso de producirse el suceso incierto previsto en éste". *Echandi Otero v. Stewart Title*, 174 DPR 355, 370 (2008). Véase también, *S.L.G. Francis-Acevedo v. SIMED*, *supra*; *Aseg. Lloyd's London v. Cía. Des. Comercial*, *supra*.

Por otro lado, el Comisionado de Seguros también tiene a su cargo regular los llamados contratos de servicios. Para fines del Código de Seguros un contrato de servicio:

> Significa un contrato o convenio emitido a cambio de un pago identificado separadamente, que tiene una duración estipulada, en el que se acuerda realizar la reparación, reposición o, en forma incidental, el mantenimiento del bien, o la indemnización por tal reparación, reposición o mantenimiento que resulten necesarios por razón de fallas operacionales o estructurales que surjan debido a defecto en los materiales, mano de obra o por desgaste normal del bien. Un contrato de servicio podrá contener disposiciones adicionales para pagos incidentales bajo determinadas circunstancias, de servicios tales como remolque y servicios de emergencia en la carretera, o, en el caso [de] un bien que no sea un vehículo de motor, para cubrir daños causados por anomalías en el servicio eléctrico, o daños accidentales al ésta usarse, si los mismos no constituyen los servicios principales ofrecidos por el contrato. **Contrato de servicio no incluye el seguro contra falla mecánica, contratos de mantenimiento, ni garantía del fabricante**. (Énfasis suplido) Art. 21.250 del Código de Seguros, 26 LPRA sec. 2125.

Como se puede apreciar, de la precitada disposición claramente se desprende que las garantías de fabricante no

se encuentran dentro del ámbito regulatorio de la OCS. De hecho, el legislador fue sumamente enfático en expresar esta exclusión, al establecer en el Art. 21.240 -- referente al alcance del subcapítulo dedicado a los contratos de servicio -- "[e]ste subcapítulo **no será de aplicación a garantías del fabricante** o contratos de mantenimiento según se definen más adelante". (Énfasis suplido) 26 LPRA sec. 2124.

Establecido lo anterior, es menester señalar que las garantías de fabricante son obligaciones de una naturaleza distinta a la de los contratos de seguros y servicios. Según definida en el Código de Seguros, la *garantía del fabricante*:

> Significa la garantía que ofrece el fabricante, importador o vendedor de bienes o servicios relacionados con éstos, libre de costo adicional, la cual no se negocia separadamente de la venta del producto, que es incidental a la venta de éste y obliga a tal fabricante, importador o vendedor a indemnizar por piezas defectuosas, falla mecánica o eléctrica. Art. 21.250 del Código de Seguros, 26 LPRA sec. 2125.

Estas garantías no son reglamentadas por el Código de Seguros, sino por la *Magnuson-Moss Warranty Act*, 15 USC secs. 2301 *et seq*. Dicha ley federal define la garantía escrita ("*written warranty*") de la siguiente forma:

> (A) any written affirmation of fact or written promise made **in connection with the sale of a consumer product** by a supplier to a buyer which **relates to the nature of the material or workmanship** and affirms or promises that such material or workmanship is defect free or will

meet a specified level of performance over a specified period of time, or

(B) **any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking**, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product. (Énfasis suplido) 15 USC sec. 2301.

Es decir, a diferencia de un contrato de seguros -- donde el asegurador asume un riesgo y se obliga a indemnizar al asegurado de ocurrir un evento incierto especificado en el contrato -- en una garantía escrita el fabricante de un producto simplemente se obliga a proteger al consumidor en la eventualidad de que el producto falle en su funcionamiento o tenga un defecto. Véase, *GAF Corp. v. County School Bd. of Washington County, Va.*, 629 F.2d 981 (4th Cir. 1980). Esta garantía está ligada estrictamente al producto y su funcionamiento.[3]

IV.

---

[3] Cabe mencionar que el 16 de agosto de 2020, la Asamblea Legislativa adoptó la Ley Núm. 130, 2020 LPR 130, mediante la cual **enmendó prospectivamente** los Arts. 21.240 y 21.250 del Código de Seguros. El Art. 21.240 añadió que el Subcapítulo II -- sobre contrato de servicios -- no será de aplicación a las garantías emitidas con la venta de un producto de protección vehicular. Por su parte, el inciso (9) del recién enmendado Art. 21.250 expone, en lo pertinente, lo siguiente:

> Una garantía emitida con la venta de un producto de protección vehicular que promete pagar costos incidentales específicos a, o a beneficio de, el beneficiario de la garantía como resultado de un defecto del producto de protección vehicular estará regulado bajo el *Magnuson-Moss Warranty Act*, 15 U.S.C. 2301 et seq., que ocupa el campo, y no bajo las disposiciones de esta Ley. 2020 LPR 130.

Por último, es importante recordar que, al revisar determinaciones administrativas, los tribunales están llamados a concederles amplia deferencia a las agencias administrativas. *Graciani Rodríguez v. Garage Isla Verde, LLC*, 202 DPR 117 (2019); *Comisionado de Seguros de Puerto Rico v. Corporación para la Defensa del Poseedor de Licencia de Armas de Puerto Rico, Inc.*, *supra*; *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013). Ello, pues se reconoce la pericia de estos organismos para atender los asuntos que le han sido delegados por ley. *Graciani Rodríguez v. Garage Isla Verde, LLC*, *supra*; *Comisionado de Seguros de Puerto Rico v. Corporación para la Defensa del Poseedor de Licencia de Armas de Puerto Rico, Inc.*, *supra*; *Rolón Martínez v. Supte. Policía*, 201 DPR 26 (2018); *OCS v. Universal*, 187 DPR 164, 178 (2012). De esta forma, las determinaciones administrativas gozan de una presunción de regularidad y corrección. *Comisionado de Seguros de Puerto Rico v. Corporación para la Defensa del Poseedor de Licencia de Armas de Puerto Rico, Inc.*, *supra*; *Mun. de San Juan v. CRIM*, 178 DPR 163 (2010).

Ahora bien, la norma antes mencionada no es absoluta ni impide a los tribunales revisar "determinaciones o interpretaciones administrativas irrazonables, ilegales o, simplemente, contrarias a derecho". *Graciani Rodríguez v. Garage Isla Verde, LLC*, *supra*, pág. 127; *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712 (2012); *Empresas Ferrer v.*

*A.R.Pe.*, 172 DPR 254 (2007). Así pues, como bien hemos expresado en ocasiones anteriores, la deferencia que -- como norma general -- se le reconoce a un dictamen de una agencia administrativa, cede si éste "no está basado en una evidencia sustancial, si la agencia erró en la aplicación de la ley o si medió una actuación irrazonable o ilegal". *Comisionado de Seguros de Puerto Rico v. Corporación para la Defensa del Poseedor de Licencia de Armas de Puerto Rico, Inc.*, *supra*, pág. 853; *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800 (2012); *Otero v. Toyota*, 163 DPR 716 (2005).

De otra parte, la deferencia antes discutida no se extiende de forma automática a las conclusiones de derecho emitidas por las agencias administrativas, pues, según establece la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 3 LPRA sec. 9675, "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Véanse, además, *Martínez v. Rosado*, 165 DPR 582 (2005); *Otero v. Toyota*, *supra*; *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004) ("Con respecto de las determinaciones de derecho, este Foro ha decretado que las conclusiones de derecho de la agencia, distinto de las determinaciones de hecho, el tribunal las puede revisar en todos sus aspectos, sin sujeción a norma o criterio alguno".).

Además, al revisar las interpretaciones que hace una agencia administrativa, el tribunal debe evaluar de forma independiente la aplicación del derecho a los hechos que la agencia estimó pertinentes. *Misión Ind. P.R. v. J.P.*, 146 DPR 64 (1998); *Junta de Relaciones del Trabajo v. Junta Administrativa del Muelle Municipal y Malecón de Ponce*, 71 DPR 154 (1950). De confrontarse con un resultado distinto al obtenido por la agencia, el tribunal deberá determinar si la discrepancia surge de un ejercicio razonable de la discreción administrativa, fundamentado en su pericia, consideraciones de política pública o en la apreciación de la prueba que tuvo ante sí. *Otero v. Toyota*, *supra*; *Rebollo v. Yiyi Motors*, *supra*; *Misión Ind. P.R. v. J.P.*, *supra*. "El tribunal podrá sustituir el criterio de la agencia por el propio sólo cuando no pueda hallar una base racional para explicar la decisión administrativa". *Misión Ind. P.R. v. J.P.*, *supra*, págs. 134-135. Véanse también *Otero v. Toyota*, *supra*; *Rebollo v. Yiyi Motors*, *supra*.

Es, pues, a la luz de la normativa antes expuesta que procedemos a disponer de las controversias ante nos.

V.

En el presente caso nos corresponde determinar si, al cursar el Requerimiento de Información a ECP, la OCS excedió el ámbito de investigación que le fue otorgado por el Código de Seguros. Como discutimos anteriormente, el

poder para investigar concedido a la OCS se circunscribe a aquellos asuntos relacionados a la reglamentación de la industria de seguros y a la administración del Código de Seguros, así como los reglamentos promulgados por la agencia.

Según se desprende del expediente del caso, la corporación que la OCS pretende investigar se dedica exclusivamente a la manufactura y venta de productos químicos para la protección de las superficies exteriores e interiores de los automóviles. Estos productos, conocidos como *The Protector*, incluyen una garantía limitada sobre su efectividad. La referida garantía ofrecida por el fabricante no tiene ningún costo adicional al de la compra de los productos y se activa cuando éstos fallan en su función de proteger las superficies exteriores o interiores de un vehículo. La garantía en cuestión detalla una serie de daños que los productos *The Protector* están diseñados para evitar, por lo que, en caso de que resulten inefectivos o tengan algún defecto, el fabricante se obliga a reparar los daños.

Como ya hemos mencionado, en un contrato de seguros el asegurador asume un riesgo a cambio de una prima y se obliga a responder ante la ocurrencia de eventos inciertos especificados en el acuerdo. La garantía ofrecida por ECP claramente no cumple con esta descripción, pues su propósito es proteger a los consumidores que adquieren *The*

*Protector* de posibles fallas en la funcionalidad del producto. Se trata de una garantía escrita en virtud de la cual el fabricante se compromete a reparar las superficies en las que se han aplicado los productos, en caso de que los mismos no las protejan según se prometió. Es decir, la obligación que contrae ECP está estrictamente ligada a la efectividad de los productos que mercadea y, como tal, se considera una garantía de fabricante.

Establecido lo anterior, precisa señalar aquí que el Código de Seguros, en sus Arts. 21.240 y 21.250, establece expresamente que sus disposiciones no son de aplicación a las garantías del fabricante. Como discutimos en secciones previas, este tipo de garantías están reguladas por el derecho federal, específicamente por la *Magnuson-Moss Warranty Act*, *supra*.

Conforme a lo antes expuesto, no nos cabe duda de que las garantías de fabricante están fuera del alcance del poder investigativo de la OCS. ECP no es una aseguradora ni realiza negocios relacionados a la industria de seguros, por lo que tampoco había razón para que la OCS insistiera en obtener información sobre sus operaciones, más allá de la que dicha corporación brindó en su contestación al referido Requerimiento.[4] Ante las

---

[4] El Requerimiento de Información emitido por la OCS a ECP no tiene relación alguna con la reglamentación de la industria de seguros ni el cumplimiento de las disposiciones legales. Ello, pues va dirigido a obtener información sobre el proceso de aplicación de los productos, el personal contratado por ECP en Puerto Rico y el procedimiento para atender reclamaciones de los consumidores.

alegaciones del señor Polo en cuanto al cobro de una cantidad de dinero no autorizada en concepto de seguros de su automóvil, correspondía investigar al concesionario y a las aseguradoras responsables de proveer dichos seguros.

Siendo ello así, resolvemos que, al emitir un Requerimiento de Información contra una entidad que se encuentra fuera su ámbito de investigación, la OCS abusó de su discreción administrativa, excediendo así los poderes que le fueron otorgados al amparo de su ley habilitadora. Por tanto, su actuación es nula. Erró, pues, el Tribunal de Apelaciones al confirmar la *Resolución* de la OCS.

## VI.

Por los fundamentos antes expuestos, revocamos la *Sentencia* emitida por el Tribunal de Apelaciones y dejamos sin efecto la *Resolución* emitida por la OSC.

Se dictará sentencia de conformidad.


Ángel Colón Pérez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

ECP Incorporated

    Peticionaria

       v.

Oficina del Comisionado de
Seguros

    Recurrida

CC-2019-0435    *Certiorari*

SENTENCIA

En San Juan, Puerto Rico a 24 de septiembre de 2020.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la *Sentencia* emitida por el Tribunal de Apelaciones y dejamos sin efecto la *Resolución* emitida por la OSC.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo